1  LEO D. PLOTKIN (SBN 101893)
2  MARK D. HURWITZ (SBN 151159)
   LEVY, SMALL & LALLAS
3  A Partnership Including Professional Corporations
   815 Moraga Drive
4  Los Angeles, California  90049
   Telephone:   (310) 471-3000
5
6  Attorneys for Defendant
   TEXTRON FINANCIAL
7  CORPORATION

8

9

10              UNITED STATES DISTRICT COURT

11            EASTERN DISTRICT OF CALIFORNIA

12

13  STARLITE DEVELOPMENT (CHINA)   )   Case No. 1:07-CV-01767-OWW-DLB
    LTD.,                          )
14                                 )
                                   )
15              Plaintiff,         )   DEFENDANT TEXTRON
                                   )   FINANCIAL CORPORATION'S
16       vs.                       )   NOTICE OF MOTION AND
                                   )   MOTION TO DISMISS PLAINTIFF'S
17  TEXTRON FINANCIAL             )   FIRST AMENDED COMPLAINT
    CORPORATION; MCA FINANCIAL     )
18  GROUP, LTD.; MORRIS C. AARON;  )   [FRCP 9(b), 12(b)(6)]
    JOHN F. TURNER & CO., INC.,    )
19  a California corporation; JFTC, INC., )
    a California corporation; MARK )   Date:      February 11, 2008
20  TURNER; JOHN F. TURNER;        )   Time:      10:00 a.m.
    KATHLEEN A. TURNER; and        )   Courtroom  3
21  DOES 1 through 20, inclusive,  )
                                   )
22                                 )
                Defendants.        )
23                                 )
                                   )
24  _____    )

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 3

    A.    TFC's Status as Turner Company's Priority Secured Lender. ............. 3

    B.    The TFC/Turner Action and the CRO Order. ........................................ 3

    C.    Starlite's Business Relationship With Turner Company. .................... 5

    D.    Starlite's Alleged Discovery of Turner Company's Financial Condition. ............................................................................................. 5

    E.    The Claims for Relief Alleged Against TFC. ...................................... 6

    F.    The State Court Demurrer and the Removal to This Court. ................. 7

III.  LEGAL ARGUMENT ............................................................................... 7

    A.    TFC Was Entitled to Enforce Its Rights as a Secured Creditor. ........... 7

    B.    Starlite's Interference Claims Must Fail. ............................................. 8

        1.    Starlite Cannot Allege That TFC Caused Any Actionable Interference. ............................................................................... 8

        2.    The Negligent Interference Claim Must Fail. ............................ 13

        3.    TFC's Conduct Was Privileged. ................................................ 14

    C.    Starlite's Aiding and Abetting Claim Must Fail. ................................ 16

    D.    Starlite Is Not Entitled to the Equitable Relief That It Seeks in the Eighth Cause of Action. ............................................................. 19

    E.    Starlite's Claims Are Barred by the Noerr-Pennington Doctrine. ....... 23

IV.   CONCLUSION ......................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

1

## CASES

2

3
Atascadero Factory Outlets, Inc. v. Augustini & Wheeler LLP
83 Cal. App. 4th 717 (2000)....................................................20

4
Augustine v. Trucco
124 Cal. App. 2d 229 (1954)....................................................9

5

6
Cadlo v. Owens-Illinois, Inc.
125 Cal. App. 4th 513 (2004)..................................................17

7
California Motor Transport Co. v. Trucking Unlimited
404 U.S. 508, 92 S. Ct. 609 (1972)....................................24, 25

8

9
Casey v. U.S. Bank N.A.
127 Cal. App. 4th 1138 (2005)................................................16

10
Communist Party v. 522 Valencia, Inc.
35 Cal. App. 4th 980 (1995)....................................................23

11

12
Della Penna v. Toyota Motor Sales, U.S.A.
11 Cal. 4th 376 (1995)...........................................................12

13
Dryden v. Tri-Valley Growers
65 Cal. App. 3d 990 (1977)..........................................1, 8, 9, 10

14

15
Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.
365 U.S. 127, 81 S. Ct. 523 (1961)....................................24, 25

16
Eaton v. Newport Bd. of Educ.
975 F.2d 292, 297, 298 (6th Cir. 1992)................................24, 25

17

18
Eltolad Music, Inc. v. April Music, Inc.
139 Cal. App. 3d 697 (1983)...................................................10

19
Evans Products Co. v. Jorgensen
245 Ore. 362, 421 P.2d 978 (1966)...........................................21

20

21
Fairbank v. Wunderman Cato Johnson
212 F.3d 528 (9th Cir. 2000)..................................................23

22
Fifield Manor v. Finston
54 Cal. 2d 632 (1960).......................................................2, 13

23

24
Forcier v. Microsoft Corp.
123 F. Supp. 2d 520 (N.D. Cal. 2000) ................................9, 10, 11

25
Forro Precision, Inc. v. International Business Machines Corp.
745 F.2d 1283 (9th Cir. 1984).............................................26, 27

26

27
Gerard v. Ross
204 Cal. App. 3d 968 (1988)...................................................16

28

**TABLE OF AUTHORITIES**

Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)
  471 F.3d 977 (9th Cir. 2006) ...........................................................16

Hynix Semiconductor, Inc. v. Rambus, Inc.
  2006 U.S. Dist. LEXIS 48884 (N.D. Cal. 2006)...........................................27

Knox v. Phoenix Leasing
  29 Cal. App. 4th 1357 (1994)...........................................................passim

Kruse v. Bank of America
  202 Cal. App. 3d 38 (1988)...........................................................14, 22

Lange v. TIG Ins. Co.
  68 Cal. App. 4th 1179 (1998)...........................................................13

Lerette v. Dean Witter Organization, Inc.
  60 Cal. App. 3d 573 (1976)...........................................................27

LiMandri v. Judkins
  52 Cal. App. 4th 326 (1997)...........................................................12, 13, 18, 19

Louen v. Twedt
  2007 U.S. Dist. LEXIS 25906 (E.D. Cal. Mar. 26, 2007) ...........................................................23

N.A.A.C.P. v. Claiborne Hardware Co.
  458 U.S. 886, 102 S. Ct. 3409 (1982) ...........................................................25

National Bank & Trust Co. v. Moody Ford, Inc.
  149 Ind. App. 479, 273 N.E.2d 757 (1971) ...........................................................21

Neilson v. Union Bank of California, N.A.
  290 F. Supp. 2d 1101 (C.D. Cal. 2003)...........................................................16

North American Chemical Co. v. Superior Court
  59 Cal. App. 4th 764 (1997)...........................................................13

Pacific Gas & Elec. Co. v. Bear Stearns & Co.
  50 Cal. 3d 1118 (1990)...........................................................8

Pavicich v. Santucci,
  85 Cal.App.4th 382 (2000)...........................................................23

Peerless Packing Co. v. Malone & Hyde, Inc.
  180 W. Va. 267, 376 S.E.2d 161 (1988)...........................................................21, 22

Pettitt v. Levy
  28 Cal. App. 3d 484 (1972)...........................................................27

Preaseau v. Prudential Ins. Co. of America
  591 F.2d 74 (9th Cir. 1979)...........................................................23

Quelimane Co. v. Stewart Title Guar. Co.
  19 Cal. 4th 26 (1998)...........................................................11, 14

Rachford v. Air Line Pilots Ass'n, Int'l
  2006 U.S. Dist. LEXIS 44070 (N.D. Cal. June 16, 2006) ...................2, 9, 13

# TABLE OF AUTHORITIES

Rosenthal v. Irell & Manella
   135 Cal. App. 3d 121 (1982)..................................................................27

Rusheen v. Cohen
   37 Cal. 4th 1048 (2006)........................................................................26

Shell Oil Co. v. Mills Oil Co.
   717 F.2d 208 (5th Cir. 1983).................................................................22

Silberg v. Anderson
   50 Cal. 3d 205 (1990)......................................................................26, 27

SMP Sales Management v. Fleet Credit Corp.
   960 F.2d 557 (5th Cir. 1992).................................................................21

United Mine Workers of America v. Pennington
   381 U.S. 657, 85 S. Ct. 1585 (1965)................................................24, 25

Video International Production, Inc. v. Warner-Amex Cable Communications, Inc.
   858 F.2d 1075 (5th Cir. 1988)...............................................................25

Weststeyn Dairy 2 v. Eades Commodities Co.
   280 F. Supp. 2d 1044 (E.D. Cal. 2003)..........................................passim

Wynn v. National Broadcasting Co., Inc.
   234 F. Supp. 2d 1067 (C.D. Cal. 2002)..................................1, 9, 10

**STATUTES**

Article 9 of the Uniform Commercial Code ................................7, 20, 21

California Civil Code § 47..............................................................26, 27

California Commercial Code § 1201 ....................................................22

California Commercial Code § 2403 ....................................................22

California Commercial Code § 2702 ....................................................22

California Commercial Code § 9102 ......................................................7

California Commercial Code § 9203 ......................................................7

California Commercial Code § 9204 ....................................................20

California Commercial Code § 9308 ......................................................7

California Commercial Code § 9310 ......................................................7

California Commercial Code § 9322 ......................................................8

California Commercial Code § 9402 ......................................................8

California Commercial Code §§ 9101, *et seq.*........................................7

**TABLE OF AUTHORITIES**

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 766, com. j. ........................................................ 14

**RULES**

Federal Rule of Civil Procedure 9(b) ............................................................ 2, 16, 17

Federal Rule of Evidence 201 ........................................................................ 3, 4, 5

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on February 11, 2008 at 10:00 a.m., or as

3    soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled

4    Court, defendant Textron Financial Corporation ("TFC") will and hereby does

5    move this Court pursuant to Rules 9(b) and 12(b)(6), Federal Rule of Civil

6    Procedure, for an order dismissing the First Amended Complaint filed by plaintiff

7    Starlite Development (China) Ltd. ("Starlite") against TFC.

8          This Motion is based on the ground that the First Amended Complaint fails

9    to state a claim against TFC upon which relief can be granted and fails to plead

10   fraud with specificity.

11         The Motion is based upon this Notice of Motion, the attached Memorandum

12   of Points and Authorities, the accompanying Request for Judicial Notice, the

13   pleadings and papers on file in this action, and such other argument and matter that

14   the Court may consider.

15

16   DATED:   January 8, 2008              LEO D. PLOTKIN
                                           MARK D. HURWITZ
17                                         LEVY, SMALL & LALLAS
                                           A Partnership Including Professional
18                                         Corporations

19

20                                         By  /s/ Leo D. Plotkin
21                                               Leo D. Plotkin
                                           Attorneys for Defendant
22                                         TEXTRON FINANCIAL
                                           CORPORATION
23   21490-2

24

25

26

27

28

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff and unsecured trade creditor Starlite Development (China) Ltd. ("Starlite"), ignoring (i) the Uniform Commercial Code's priority scheme, (ii) the complete lack of any business or transactional relationship between Starlite and defendant Textron Financial Corporation ("TFC"), and (iii) the state court order sustaining TFC's demurrer to all but one of Starlite's claims alleged in its original complaint, persists in improperly attempting to transform its garden variety collection action against John F. Turner and Company, Inc. ("Turner Company") into a tort action, which has no basis in law, against TFC, Turner Company's properly-perfected secured lender.  Starlite allegedly did not receive payment in full <u>from Turner Company</u> for goods that it sold and shipped <u>to Turner Company</u>; Starlite's basic assertion is that TFC, which allegedly received the proceeds from Turner Company's sale of the goods, somehow is liable to Starlite as a result. Starlite cannot state a claim for relief against TFC because:

- ■   TFC is not alleged to have had <u>any</u> communications or contact, direct or indirect, with Starlite;

- ■   TFC did not incur any obligation, contractual or otherwise, to Starlite;

- ■   TFC did not owe any duty to Starlite, and is not alleged to have had <u>any</u> relationship of any kind with Starlite;

- ■   TFC did not cause Turner Company not to perform any obligation to Starlite that Turner Company otherwise would have performed [<u>Dryden v. Tri-Valley Growers</u>, 65 Cal. App. 3d 990 (1977); <u>Wynn v. National Broadcasting Co., Inc.</u>, 234 F. Supp. 2d 1067, 1121-1122 (C.D. Cal. 2002)], which is fatal to all of Starlite's interference claims; indeed, the Complaint alleges that Turner Company was "nearly insolvent" at the time payments to Starlite allegedly were due;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- ■ Starlite has not alleged and cannot allege that TFC engaged in any conduct with intent to facilitate a particular fraud by Turner Company, much less has Starlite pled a claim against TFC for aiding and abetting fraud with the specificity that Federal Rule of Civil Procedure 9(b) mandates;

- ■ Starlite did not have any rights in Turner Company's assets that were entitled to priority over TFC's publicly filed security interest;

- ■ TFC was entitled to enforce its rights as a secured creditor of Turner Company by, among other things, collecting its receivables through a lockbox, without subjecting itself to Starlite's equitable claim for unjust enrichment [Knox v. Phoenix Leasing, 29 Cal. App. 4th 1357 (1994); Weststeyn Dairy 2 v. Eades Commodities Co., 280 F. Supp. 2d 1044 (E.D. Cal. 2003)]; and

- ■ Starlite has not alleged and cannot allege any wrongful conduct by TFC; its enforcement of its rights as a secured creditor and its privileged conduct in prior litigation in this Court cannot satisfy the pleading requirement that Starlite allege that TFC's conduct was wrongful apart from the purported "interference" itself, nor cannot it support a claim for aiding and abetting any purported fraud by Turner Company.

Accordingly, whether or not Turner Company had sufficient assets to pay its alleged obligations to Starlite, TFC was not required to refrain from exercising its own rights in Turner Company's assets, and TFC's conduct certainly does not give rise to a tort cause of action by Starlite. Moreover, Starlite seeks relief that in any event is not available under California law, such as a cause of action for negligent interference with contract, which does not exist under California law [Fifield Manor v. Finston, 54 Cal. 2d 632, 636 (1960); Rachford v. Air Line Pilots Ass'n, Int'l, 2006 U.S. Dist. LEXIS 44070, *22 n.4 (N.D. Cal. June 16, 2006)].

-2-

1   Accordingly, Plaintiff's First Amended Complaint (the "Amended Complaint")

2   against TFC should be dismissed without leave to amend.

3   **II.   STATEMENT OF FACTS**

4          For purposes of this Motion, and without admitting the truth of any of the

5   material allegations of the Amended Complaint (all of which are denied by TFC),

6   TFC assumes the truth of the allegations of the Amended Complaint, except to the

7   extent contradicted by matters of which the Court may take judicial notice.

8          **A.     TFC's Status as Turner Company's Priority Secured Lender.**

9          As Starlite admits, TFC was "Turner Company's primary lender" [Amended

10  Complaint, ¶ 18].   As shown by the UCC-1 financing statement and related

11  documents that TFC has filed with the California Secretary of State (collectively,

12  the "UCC-1") [Request for Judicial Notice ("RJN"), Ex. "B"][1], TFC had a prior

13  perfected security interest in virtually all assets of Turner Company, including

14  without limitation "all accounts, chattel paper, general intangibles, documents,

15  inventory, equipment, and fixtures . . . and the products and proceeds" thereof.

16         The UCC-1 has been on file with the California Secretary of State as a

17  public record since April 25, 2000 [RJN, Ex. "B"].   Accordingly, for over seven

18  years, anyone concerned about the existence of prior liens on Turner Company's

19  assets has had actual or constructive notice of TFC's prior perfected security

20  interest.

21         **B.     The TFC/Turner Action and the CRO Order.**

22         On February 14, 2006, <u>after</u> Turner Company and TFC allegedly started a

23  <u>secret</u> plot to defraud Starlite, TFC <u>publicly</u> filed an action against Turner

24  Company in this Court entitled <u>Textron Financial Corporation v. John F. Turner</u>

25  <u>and Company</u>, Case No. 06-CV-00162 OWW-LJO (the "TFC/Turner Action").[2]

26  _____

27  [1]   Pursuant to Federal Rule of Evidence 201, TFC respectfully requests that the
     Court take judicial notice of the UCC-1.

28  [2]   The TFC/Turner Action was later consolidated with another action in this Court
     under Case No. 06-CV-00160 OWW-LJO.

1    Two days later, on February 16, 2006, TFC <u>publicly</u> filed motions in the
2    TFC/Turner Action for appointment of a receiver for Turner Company and for a
3    temporary restraining order pending appointment of a receiver.  On March 8, 2006,
4    following a <u>contested</u> hearing before this Court, a TRO was entered by the Court.
5    Turner Company opposed TFC's motions, and TFC <u>publicly</u> filed reply papers in
6    support of the motions.  All of the foregoing pleadings and motion papers were
7    public records of this Court at the time that they were filed, open and available for
8    examination by the public, including Starlite.[3]

9        As <u>disclosed</u> by TFC's motion papers, Turner Company not only defaulted
10   on its loan obligations to TFC, but Turner Company diverted millions of dollars in
11   collections of accounts receivable that Turner Company was contractually
12   obligated to remit to TFC, whether directly or through a lockbox.  Indeed, Turner
13   Company admitted that it diverted millions of dollars in collections.

14       The initiation of the TFC/Turner Action in February, 2006, TFC's public
15   assertions of fraud therein, and the contested nature of the initial motions, all
16   subject to judicial notice, conclusively rebuts any potential allegation of a scheme
17   between Turner Company and TFC in January, 2006 when, as alleged by Starlite,
18   Turner Company ordered 3.25 million calendars from Starlite.

19       On March 24, 2006, this Court entered an Order appointing a Chief
20   Restructuring Officer ("CRO") for Turner Company (the "CRO Order") [RJN,
21   Ex. "A"].  Pursuant to the CRO Order, all collections of Turner Company's
22   accounts receivable were to be directed to a lockbox established pursuant to the
23   Loan and Security Agreement between TFC and Turner Company (the
24   "Lockbox").  The CRO Order further provided that (a) the CRO had authority to
25   obtain advances from TFC, which TFC was not obligated to make, (b) the CRO

---

[3] TFC respectfully requests that the Court, pursuant to Federal Rule of Evidence
201, take judicial notice of the Complaint, the motion papers that TFC filed, and
the TRO in the TFC/Turner Action [RJN, Exs. D, E, F, G, and H].

1    could sell any or all assets of Turner Company, and (c) all documents filed in the

2    TFC/Turner Action would be placed under seal.[4]    After the records of the

3    TFC/Turner Action were sealed, the existence of the action remained a matter of

4    public record that could be ascertained through, for instance, a simple LEXIS

5    search [RJN, Ex. I].

6    **C.    Starlite's Business Relationship With Turner Company.**

7        Starlite first sold calendars to Turner Company in 2002, and continued to do

8    so each year thereafter [Amended Complaint, ¶¶ 13-14].   On January 19, 2006,

9    Turner Company submitted a written purchase order to Starlite for 3.25 million

10   calendars, with 10% to be paid up front, and the remaining 90% to be paid in equal

11   installments in October, November and December, 2006 [Amended Complaint,

12   ¶ 15].   Starlite shipped calendars to Turner Company through October 2006.

13   Turner Company paid a total of $257,693 to Starlite for the 2006 shipments,

14   leaving a total unpaid debt of $2,693,989 [Amended Complaint, ¶ 16].

15       The Amended Complaint does not contain any allegation that, prior to

16   making its last shipment of calendars to Turner Company, Starlite performed any

17   due diligence investigation to ascertain Turner Company's financial condition or

18   the existence of secured creditors holding interests in Turner Company's assets.

19   Starlite also does not allege that it had any communications at all with TFC, much

20   less that TFC made any representations to Starlite regarding Turner Company.

21   **D.    Starlite's Alleged Discovery of Turner Company's Financial**

22   **Condition.**

23       In October 2006, after Turner Company failed to make its installment

24   payment then due, Starlite contacted Turner Company and was directed to the CRO

25   [Amended Complaint, ¶ 17].   Starlite was informed that Turner Company was

---

[4]  TFC respectfully requests that the Court, pursuant to Federal Rule of Evidence 201, take judicial notice of the CRO Order.

"nearly insolvent" [Amended Complaint, ¶ 18]  The CRO provided Starlite with a copy of the CRO Order [Amended Complaint, ¶ 20].

Starlite's initial contact with the CRO occurred on November 10, 2006 [Amended Complaint, ¶ 17], after Starlite made its final shipment to Turner Company in October 2006 [Amended Complaint, ¶ 16].

### E.    The Claims for Relief Alleged Against TFC.

TFC is not named as a defendant in the First, Second and Fourth Causes of Action.   In the Third Cause of Action for Aiding and Abetting Fraud, notwithstanding the express terms of the CRO Order that this Court issued, Starlite concludes that TFC controlled Turner Company's funds and thus assisted Turner Company in committing a fraud, without specifically alleging what assistance TFC provided [Amended Complaint, ¶¶ 47-53].

In the Fifth Cause of Action for Intentional Interference with Economic Advantage and the Sixth Cause of Action for Intentional Interference with Contract, Starlite alleges that "Textron engaged in intentional and wrongful conduct, including, without limitation, making fraudulent misrepresentations and wilfully [sic] concealing facts, designed to interfere with and/or to disrupt Starlite's" economic and/or contractual relationship with Turner Company [Amended Complaint, ¶¶ 60, 68].   Starlite does not, however, allege any misrepresentations that TFC purportedly made, nor does not it allege any basis for any duty on the part of TFC to disclose facts to Starlite.  The Complaint also does not allege that Turner Company would have performed its obligations to Starlite but for TFC's purported interference.

The remaining causes of action that Starlite has alleged against TFC are (a) the Seventh Cause of Action for "Negligent Interference with Contractual and Economic Relationship" and (b) the Eighth Cause of Action for "Unjust Enrichment - Imposition of Constructive Trust," in which Starlite alleges that TFC

1  has been unjustly enriched by Starlite's sale of calendars to Turner Company

2  [Amended Complaint, ¶ 82].

3       **F.**    **The State Court Demurrer and the Removal to This Court.**

4       Starlite originally filed this action in the Superior Court of the State of

5  California for the County of Stanislaus (the "State Court"). After the State Court

6  entered an order [RJN, Ex. "C"] sustaining TFC's demurrer to all but one of the

7  causes of action that Starlite alleged against TFC in the original complaint,[5] Starlite

8  filed the pending First Amended Complaint, adding the CRO as a defendant. On

9  December 5, 2007, the CRO filed a Notice of Removal whereby the action was

10  removed to this Court.

11  **III.**   **LEGAL ARGUMENT**

12       **A.**    **TFC Was Entitled to Enforce Its Rights as a Secured Creditor.**

13       Security interests in personal property collateral, such as accounts receivable

14  and inventory, are governed by Article 9 of the Uniform Commercial Code

15  ("UCC"), codified in California as Commercial Code Sections 9101, *et seq.* A

16  security interest attaches to collateral and is enforceable against third parties if

17  (1) value has been given, (2) the debtor has rights in the collateral, and (3) the

18  debtor has signed a security agreement describing the collateral. Commercial Code

19  § 9203(a), (b); see Weststeyn Dairy 2 v. Eades Commodities Co., 280 F. Supp. 2d

20  1044, 1086 (E.D. Cal. 2003). Pursuant to Commercial Code Sections 9308(a) and

21  9310, a security interest in accounts receivable and inventory is perfected by filing

22  a financing statement with the Secretary of State.

23       Accordingly, as reflected by the UCC-1, TFC, as Turner Company's secured

24  lender, has a perfected security interest in, among other things, Turner Company's

25  accounts receivable and inventory, and proceeds thereof.[6] Pursuant to Commercial

26  

27  [5] The State Court overruled TFC's demurrer only as to the Eighth Cause of Action for "Unjust Enrichment - Imposition of Constructive Trust."

28  [6] The description of collateral in the UCC-1 includes "accounts," which Commercial Code Section 9102(a)(2) defines as, among other things, "a right to

Code Section 9322(a), TFC's security interest has priority over unperfected or later perfected security interests, not to mention wholly unsecured claims such as Starlite's.[7] <u>Weststeyn Dairy</u>, 280 F. Supp. 2d at 1088.

> **B.    Starlite's Interference Claims Must Fail.**
>
> > **1.    Starlite Cannot Allege That TFC Caused Any Actionable Interference.**

Starlite's Fifth, Sixth and Seventh Causes of Action do not state a claim against TFC because Starlite has not alleged that TFC proximately caused any interference with any contractual or economic relationship between Starlite and the "nearly insolvent" Turner Company.   The elements of a cause of action for intentional interference with contractual relations are:    "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) <u>resulting</u> damage." <u>Pacific Gas & Elec. Co. v. Bear Stearns & Co.</u>, 50 Cal. 3d 1118, 1126 (1990) (emphasis added; demurrer properly sustained).

Without the requisite causation, no cause of action for intentional interference with contractual relations exists.   The plaintiff "must allege that <u>the contract would otherwise have been performed</u>, and that <u>it was breached and abandoned by reason of the defendant's wrongful act</u> and that such act was <u>the moving cause</u> thereof." <u>Dryden v. Tri-Valley Growers</u>, 65 Cal. App. 3d 990, 997 (1977) (citations omitted; emphasis added); <u>see also</u> <u>Rachford v. Air Line Pilots Ass'n, Int'l</u>, 2006 U.S. Dist. LEXIS 44070, *21 (N.D. Cal. June 16, 2006) (quoting

---

payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold."   Turner Company's accounts receivable from the sale of calendars certainly constitute "accounts."

[7] In addition, pursuant to Commercial Code Section 9402, the existence of TFC's security interest in Turner Company's assets does not subject TFC to liability, whether in contract or tort, for Turner Company's acts or omissions.

1  <u>Dryden</u>; claim for intentional interference with contract dismissed with prejudice);

2  <u>Wynn v. National Broadcasting Co., Inc.</u>, 234 F. Supp. 2d 1067, 1121-1122 (C.D.

3  Cal. 2002) (quoting <u>Dryden</u>); <u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520, 532

4  (N.D. Cal. 2000) (quoting <u>Dryden</u>).

5      In <u>Dryden</u>, the plaintiffs had a contract to purchase certain waste products

6  from the owners of a processing plant.  The owners sold the plant to the defendant.

7  The plaintiffs sued the defendant for intentional interference, alleging that

8  defendant induced the owners to sell the plant and did so for the purpose of

9  preventing the performance of the waste product contract.  The Court of Appeal

10 held that defendant's demurrer was properly sustained without leave to amend

11 because, prior to the sale of the plant, the owners sent notice of their intent to

12 cancel the waste products contract to plaintiffs.  The Court found that "proximate

13 causation, a vital element of the cause of action [citation omitted] was lacking as a

14 matter of law."  <u>Dryden</u>, 65 Cal. App. 3d at 997.

15     In <u>Augustine v. Trucco</u> (1954) 124 Cal. App. 2d 229, 246-247, the Court of

16 Appeal held that no intentional interference action existed in a case involving

17 allegations that defendant brokers induced property sellers to breach their contract

18 with plaintiff broker and to use defendants to make a sale to buyers originally

19 procured by plaintiff.  The Court noted that there was "no allegation that the

20 [sellers] would otherwise have performed any contract with plaintiff, or that it was

21 breached or abandoned by any wrongful act of [defendant brokers], or that any act

22 of [defendant brokers] was the moving cause of the [sellers'] breaching the

23 contract."  <u>Id</u>.

24     In another case citing <u>Dryden</u> and <u>Augustine</u>, the Court of Appeal held that

25 to establish a claim for interference with contractual relations, the defendant's

26 conduct must be "the" moving cause, and not merely "a" moving cause, of the

27 breach of the plaintiff's contract.  <u>Eltolad Music, Inc. v. April Music, Inc.</u>, 139 Cal.

28 App. 3d 697, 708 (1983).  Accordingly, the Court ruled that (a) the trial court's

-9-

refusal to instruct the jury that plaintiff had to prove that defendant was "the" moving cause of the breach was improper, and (b) this error warranted the granting of defendant's motion for new trial.  Id.

In Wynn, the Court cited Dryden in dismissing with prejudice the plaintiffs' claim for interference with contractual relations.  "Plaintiffs have also failed to allege facts sufficient to allow an inference that the Employer Defendants otherwise would have performed had the Agency Defendants not interfered, which is a requirement to establish causation."  Id., 234 F. Supp. 2d at 1121 (emphasis added).  In Forcier, the Court denied a motion for leave to amend to allege a claim for interference with contract on the ground that the amendment was futile:

> "In order to plead interference with contract, plaintiffs must allege *inter alia* that the alleged breach of contract '*was caused by defendant's unjustified* or *wrongful conduct*'.  *Dryden v. Tri-Valley Growers,* 65 Cal. App. 3d 990, 995, 135 Cal. Rptr. 720 (1977) (emphasis in original).  'It has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof.'  *Id.* at 997.  In this case, plaintiffs cannot so allege because (1) according to its own allegations, Aha! breached the 1991 confidentiality agreement at least by 1993, i.e., years before Microsoft allegedly induced Aha!'s former employees to breach it, and (2) as noted above, the agreement had expired by its own terms in October of 1994, again years before Microsoft allegedly became involved."

Forcier, 123 F. Supp. 2d at 532.

-10-

1    Starlite's allegations do not come close to establishing that TFC was "the

2    moving cause" of any failure of Turner Company to perform its purported

3    obligations to Starlite.   Since Starlite admits that Turner Company was "nearly

4    insolvent" [Amended Complaint, ¶ 18], Starlite cannot show that Turner Company

5    would have paid Starlite if not for TFC's conduct.   Because Starlite cannot

6    establish the requisite causation, Starlite cannot state interference claims against

7    TFC.

8    Starlite's claims against TFC are not saved by reliance on an "economic"

9    rather than a contractual relationship in the Fifth and Seventh Causes of Action.

10   As the California Supreme Court has recognized, "interference with an existing

11   contract receives greater solicitude than does interference with prospective

12   economic advantage."   Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th 26,

13   55 (1998).   Accordingly, since Starlite cannot show that TFC was the moving

14   cause of any breach by Turner Company of contractual obligations to Starlite, it

15   cannot establish the requisite causation simply by recharacterizing its contractual

16   relationship with Turner Company as a mere "economic" relationship or

17   advantage, which is afforded lesser protection than a contractual relationship.

18   Moreover, Starlite has not alleged any prospective economic relationship with

19   Turner Company apart from the contractual relationship.   Starlite has not, for

20   instance, alleged that Turner Company would have placed orders with Starlite for

21   2007 (much less that Turner Company could or would have paid for them) but for

22   TFC's conduct.

23   Furthermore, Starlite has not satisfied the "independently wrongful"

24   requirement for a claim for interference with prospective economic advantage.

25   The elements of a cause of action for intentional interference with prospective

26   economic advantage are essentially similar to those for intentional interference

27

28

-11-

with contract,[8] except that the plaintiff "must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was <u>wrongful by some legal measure other than the fact of interference itself</u>."  <u>Della Penna v. Toyota Motor Sales, U.S.A.</u>, 11 Cal. 4th 376, 393 (1995).

This "independently wrongful" conduct must be the act that also constitutes the interference, not some separate tortious conduct.  "It is insufficient to allege the defendant engaged in tortious conduct distinct from or only tangentially related to the conduct constituting the actual interference."  <u>LiMandri v. Judkins</u>, 52 Cal. App. 4th 326, 342 (1997) ("We do not believe Judkins's alleged misappropriation of LiMandri's name qualifies as 'independently wrongful' conduct under *Della Penna* because while it may have been independently tortious, it was not the act that constituted the interference with LiMandri's prospective advantage.").  Even if Starlite could properly allege that TFC acted to cause Turner Company not to pay Starlite (which it cannot), Starlite cannot show that such acts of TFC were otherwise wrongful.

Indeed, in <u>Weststeyn Dairy</u>, an analogous case, this Court expressly rejected unsecured creditors' claims against a secured creditor for intentional and negligent interference with prospective economic advantage.  The secured creditor exercised rights to prepayments that the plaintiffs made for goods they never received from the debtor.  Because the secured creditor "had an express contractual right to enforce against [debtor] its security interest in the prepayments," plaintiffs could not establish their interference claims.  <u>Id.</u>, 280 F. Supp. 2d at 1090.  Similarly, this

[8] "The elements of intentional interference with prospective economic advantage have been stated as follows: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  <u>LiMandri v. Judkins</u>, 52 Cal. App. 4th 326, 339 (1997) (citation and internal quotations omitted).

-12-

1  Court must reject Starlite's effort to state an interference claim based on TFC's

2  exercise of its right to the collections of Turner Company's accounts receivable.

3  **2.      The Negligent Interference Claim Must Fail.**

4  Starlite also cannot preserve an interference claim by resorting to a

5  negligence theory.   First, a cause of action for negligent interference with

6  prospective economic advantage requires the plaintiff to plead and prove facts

7  similar to a claim for intentional interference, including the causation and

8  "independently wrongful" conduct requirements that Starlite failed to satisfy with

9  respect to the intentional interference claim.   Lange v. TIG Ins. Co., 68 Cal. App.

10  4th 1179, 1187 (1998); Weststeyn Dairy, 280 F. Supp. 2d at 1090.[9]   Furthermore,

11  "negligent interference may be asserted only where the defendant owes the

12  plaintiff a duty of care."   Weststeyn Dairy, 280 F. Supp. 2d at 1090, citing Lange.

13  Starlite has not established that TFC had any relationship at all with Starlite, much

14  less that TFC owed Starlite any duty.

15  Moreover, no cause of action for negligent interference with contract exists

16  under California law.   Fifield Manor v. Finston, 54 Cal. 2d 632, 636 (1960) ("the

17  courts have quite consistently refused to recognize a cause of action based on

18  negligent, as opposed to intentional, conduct which interferes with the performance

19  of a contract between third parties or renders its performance more expensive or

20  burdensome"); LiMandri, 52 Cal. App. 4th at 349; see also Rachford, 2006 U.S.

21  Dist. LEXIS 44070 at *22 n.4.   Starlite's effort to mask this fatal defect in its claim

22

23  [9] "The tort of negligent interference with prospective economic advantage is
established where a plaintiff demonstrates that (1) an economic relationship existed

24  between the plaintiff and a third party which contained a reasonably probable
future economic benefit or advantage to plaintiff; (2) the defendant knew of the

25  existence of the relationship and was aware or should have been aware that if it did
not act with due care its actions would interfere with this relationship and cause

26  plaintiff to lose in whole or in part the probable future economic benefit or
advantage of the relationship; (3) the defendant was negligent; and (4) such

27  negligence caused damage to plaintiff in that the relationship was actually
interfered with or disrupted and plaintiff lost in whole or in part the economic

28  benefits or advantage reasonably expected from the relationship." North American
Chemical Co. v. Superior Court, 59 Cal. App. 4th 764, 786 (1997).

-13-

for negligent interference with contract by merging the claim into the Seventh Cause of Action for "Negligent Interference with Contractual and Economic Relationship" is egregious.  In any event, Starlite cannot state a cause of action on any negligent interference theory, and the Seventh Cause of Action must fail.

### 3.    TFC's Conduct Was Privileged.

Not only is Starlite unable to state an interference claim against TFC, but in any event TFC's exercise of its rights to collections on Turner Company's accounts receivable was privileged.  In <u>Quelimane Co. v. Stewart Title Guar. Co.</u>, 19 Cal. 4th 26 (1998), the California Supreme Court recognized the defense of privilege to an interference claim.   While the Court in <u>Quelimane</u> noted that "incidental" interference that is a "necessary consequence" of the defendant's conduct might be actionable, the Court then explained:

> "The fact that this interference with the other's contract was not desired and was purely incidental in character is, however, a factor to be considered in determining whether the interference is improper.  If the actor is not acting criminally nor with fraud or violence or other means wrongful in themselves but is <u>endeavoring to advance some interest of his own</u>, the fact that he is aware that he will cause interference with the plaintiff's contract may be regarded as such a minor and incidental consequence and so far removed from the defendant's objective that <u>as against the plaintiff the interference may be found to be not improper.</u>"

<u>Quelimane</u>, 19 Cal. 4th at 56 (quoting Restatement (Second) of Torts § 766, com. j.) (emphasis added); <u>Weststeyn Dairy</u>, 280 F. Supp. 2d at 1088-1089 (same). <u>See also Kruse v. Bank of America</u>, 202 Cal. App. 3d 38, 66 (1988) ("interference with business relations is ordinarily privileged if one has a financial interest in one of the parties").

In <u>Weststeyn Dairy</u>, this Court rejected the plaintiff unsecured creditors' interference claims against the defendant secured creditor, who exercised its rights to prepayments that the plaintiffs made for goods they never received from the debtor:

1    "That Diversified was a competing creditor, seeking to enforce

2    its security interest in Eades' accounts gave Diversified a

3    privilege to protect its economic interests, that validates

4    intentional acts designed to disrupt Plaintiffs' relationship with

5    Eades.  While the evidence supports Plaintiffs' contention that

6    Diversified knew of the contracts between Eades and Plaintiffs,

7    evidence that Diversified lawfully demanded Eades pay-over

8    accounts, which were collateral under the security agreement to

9    enforce its security interests, such conduct, authorized by the

10   security agreement, negates the argument Diversified

11   wrongfully intended to disrupt and did disrupt Eades'

12   relationship with Plaintiffs.  The defense of economic privilege

13   or justification applies.  Diversified was entitled to seek and

14   obtain the prepayments under the terms of its Security

15   Agreement.  The fact that Diversified knew such seizure would

16   interfere with Plaintiffs' contracts 'may be regarded as such a

17   minor and incidental consequence and so far removed from

18   defendant's objective that as against the plaintiff the

19   interference may be found not to be improper.'"

20   Id., 280 F. Supp. 2d at 1089 (citations omitted; emphasis

21   added).

22       TFC's conduct was likewise privileged.  Just as the secured creditor in

23   Weststeyn Dairy was entitled to exercise its right to plaintiffs' prepayments for

24   goods plaintiffs never received from the debtor, TFC was entitled to collect the

25   proceeds of sales of goods for which Turner Company never paid Starlite.  The

26   interference claims therefore must fail.

27

28

-15-

### C.    Starlite's Aiding and Abetting Claim Must Fail.

Starlite's Third Cause of Action against TFC for aiding and abetting fraud must be dismissed for the same reasons as the defective interference claims.  TFC was entitled to enforce its rights as a secured creditor, including the collection of proceeds of goods that Starlite sold to Turner Company, without subjecting itself to liability for aiding and abetting any purported fraud by Turner Company.

In addition, Starlite has not properly pleaded a claim for aiding and abetting fraud.  Under California law, "[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . *knows* the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act."  Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.), 471 F.3d 977, 993 (9th Cir. 2006) (italics in original), quoting Casey v. U.S. Bank N.A., 127 Cal. App. 4th 1138 (2005)

"California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."  Casey, 127 Cal. App. 4th at 1145 (demurrer to aiding and abetting claim properly sustained).  An alleged aider and abettor "can be held liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted *with the intent of facilitating the commission of that tort*."  Id., 127 Cal. App. 4th at 1146 (italics in original), quoting Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988).  In addition, because Starlite's aiding and abetting claim is based on alleged fraud, it must be pled with specificity pursuant to Federal Rule of Civil Procedure 9(b).  See Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003).[10]

---

[10]  "The well-known elements of a cause of action for fraud are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on

-16-

1    Starlite simply has not pled with specificity that TFC knowingly and
2    intentionally gave substantial assistance to Turner Company or the CRO with the
3    intent to facilitate the commission of a particular fraud.   Instead, Starlite
4    generically alleges that TFC "had knowledge of all of the fraudulent acts of Turner
5    Company and of the CRO" and "knew that its actions and inactions as alleged
6    herein would assist Turner Company in the commission of a fraud" [Amended
7    Complaint, ¶¶ 52, 53].

8    Starlite admits that (a) TFC sued Turner Company and sought appointment
9    of a receiver for Turner Company in February 2006 and (b) a month later, this
10   Court issued the CRO Order appointing the CRO to "take over the management of
11   Turner Company" [Amended Complaint, ¶ 18];   this negates any potential
12   allegation (not expressly made by Starlite in any event) that TFC was aiding or
13   abetting any fraud by Turner Company as of January 19, 2006, when Turner
14   Company submitted its purchase order to Starlite for the calendars for which
15   Starlite has not been paid [Amended Complaint, ¶ 15].  By the time TFC directly
16   wired funds to Starlite's bank account on or about April 1, 2006 [Amended
17   Complaint, ¶ 24], this Court had already appointed the CRO to take control of
18   Turner Company, thereby precluding any fraud by Turner Company that TFC
19   could have aided or abetted.

20   Moreover, Starlite has not even pleaded fraud by Turner Company, and
21   certainly not with the specificity required by Rule 9(b).  The Amended Complaint
22   does not allege any specific misrepresentation by Turner Company, but instead
23   merely states that the "Turner Defendants" (all of whom, except Turner Company,
24   have now been dismissed) submitted purchase orders and payments to Starlite
25   [Amended Complaint, ¶ 39].   Absent any specific allegations of particular
26   representations by Turner Company on which Starlite justifiably relied, there

27
28   the misrepresentation; (4) justifiable reliance; and (5) resulting damages." Cadlo v.
     Owens-Illinois, Inc., 125 Cal. App. 4th 513 (2004), 519.

1    cannot be any fraud, much less can TFC be held liable for aiding or abetting any

2    such fraud.

3            Any purported representations by the CRO to Starlite are not actionable.

4    Not only is the CRO, as an officer duly appointed by Order of this Court, immune

5    from liability for the reasons set forth in the CRO's pending motion to dismiss the

6    Amended Complaint, but such purported representations occurred in November

7    and December 2006 [Amended Complaint, ¶ 19], <u>after</u> Starlite made its last

8    shipment to Turner Company in October 2006 [Amended Complaint, ¶ 16].

9    Accordingly, Starlite could not have been defrauded by the CRO's representations,

10   as Starlite could not have relied on such representations when it shipped calendars

11   for which it did not receive payment.

12           Finally, any allegation that TFC failed to disclose information to Starlite is

13   irrelevant and ignores TFC's obligation not to disclose confidential information

14   regarding its borrower.  Since TFC had no relationship at all with Starlite, and did

15   not enter into any transaction with Starlite, TFC cannot be held liable for

16   concealing or failing to disclose any fact.  As the Court of Appeal stated in

17   <u>LiMandri</u>:

18                    "There are 'four circumstances in which nondisclosure or

19            concealment may constitute actionable fraud: (1) when the

20            defendant is in a fiduciary relationship with the plaintiff;

21            (2) when the defendant had exclusive knowledge of material

22            facts not known to the plaintiff; (3) when the defendant actively

23            conceals a material fact from the plaintiff; and (4) when the

24            defendant makes partial representations but also suppresses

25            some material facts. [Citation.]'  None of these circumstances

26            apply in the instant case.

27                    "Clearly, there was no fiduciary relationship between

28            [defendant and plaintiff].  Each of the other three circumstances

-18-

in which nondisclosure may be actionable <u>presupposes the existence of some other relationship between the plaintiff and defendant</u> in which a duty to disclose can arise. As set forth in BAJI No. 12.36 (8th ed. 1994), 'where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose such known facts.' (Italics added.)

"As a matter of common sense, <u>such a relationship can only come into being as a result of some sort of *transaction* between the parties</u>."

<u>Id</u>., 52 Cal. App. 4th at 336-337 (footnote and citation omitted; italics in original; emphasis added).

Since TFC did not have any transaction or relationship with Starlite, no claim against TFC, whether for direct or for aider and abettor liability, may be premised on TFC's concealment or nondisclosure.

**D.     Starlite Is Not Entitled to the Equitable Relief That It Seeks in the Eighth Cause of Action.**

Starlite's Eighth Cause of Action for "Unjust Enrichment – Imposition of Constructive Trust" cannot exist as a matter of law because it contravenes the UCC.  By perfecting its security interest in collateral under the UCC, a secured creditor obtains priority over the debtor's other creditors and has the right to take possession of and sell the collateral if the debtor defaults.  <u>Knox v. Phoenix Leasing</u> (1994) 29 Cal. App. 4th 1357, 1360 (citing UCC provisions then in

-19-

1   effect).[11]   The security interest may extend to collateral acquired after the execution

2   of a security agreement.  Commercial Code § 9204(a).

3        The UCC prevails over equitable claims such as unjust enrichment and is

4   "intended to immunize secured creditors from such claims in all but the rarest of

5   cases."  Knox, 29 Cal. App. 4th at 1368; see also Atascadero Factory Outlets, Inc.

6   v. Augustini & Wheeler LLP, 83 Cal. App. 4th 717, 722 (2000) (same).  In Knox,

7   the secured creditor was a lender that liquidated its defaulting borrower's assets,

8   including barrels that plaintiff had sold to the borrower but for which plaintiff had

9   not been paid.  Id., 29 Cal. App. 4th at 1359.  The trial court had entered judgment

10  in favor of plaintiff, but the Court of Appeal reversed the judgment, upholding the

11  secured creditor's security interest in the barrels and its right to sell them in

12  liquidation.  Id. at 1368.  The fact that the addition of the barrels enhanced the

13  collateral covered by the security interest did not support liability.  Id.; see also

14  Atascadero, 83 Cal. App. 4th at 721-722 (secured creditors' acquiescence in

15  attorneys' prosecution of litigation on behalf of debtor, which solely benefited

16  secured creditors, did not subject them to attorneys' unjust enrichment claim).[12]

17       The court in Knox recognized that "a decided majority of jurisdictions have

18  disallowed the equitable remedy of restitution (whether termed unjust enrichment,

19  quantum meruit, contract implied in law, etc.)" against a "code-protected secured

20  creditor."  Id. at 1360-1361 (emphasis added), citing SMP Sales Management v.

21

22  _____

23  [11]  Article 9 of the Commercial Code was revised as of July 1, 2001, but the same
    general concepts discussed in pre-revision case law continue to apply to revised
    Article 9.

24  [12]  In Weststeyn Dairy, this Court dismissed as dicta any suggestion in Knox that an
25  unsecured creditor may have an unjust enrichment claim when it provides goods or
    services necessary to preserve the secured creditor's collateral.  The court further
26  stated that such dicta was inapplicable when what the unsecured creditor provides
    is the collateral itself, not goods or services to preserve collateral.  Id., 280 F. Supp.
27  2d at 1088.  Just as the prepayments that the plaintiffs made in Weststeyn Dairy
    were collateral in which the secured creditor could enforce its rights, the calendars
28  that Starlite shipped to Turner Company were collateral in which TFC could
    enforce its rights without incurring liability for unjust enrichment.

1   Fleet Credit Corp., 960 F.2d 557 (5th Cir. 1992), Peerless Packing Co. v. Malone

2   & Hyde, Inc., 180 W. Va. 267, 376 S.E.2d 161 (1988), National Bank & Trust Co.

3   v. Moody Ford, Inc., 149 Ind. App. 479, 273 N.E.2d 757 (1971), and Evans

4   Products Co. v. Jorgensen, 245 Ore. 362, 421 P.2d 978 (1966).   Even if the

5   absence of a remedy for unjust enrichment yields "occasionally harsh results," such

6   as the secured creditor's retention of an "unjust" benefit, it is "the price to be paid

7   for preserving the integrity of the Uniform Commercial Code's scheme for secured

8   transactions, encouraging compliance with the code, and thereby insuring a

9   predictable system of creditor priorities." Knox, 29 Cal. App. 4th at 1361.

10       Just as the enhancement of the collateral resulting from the sale of goods in

11  Knox did not give rise to an unjust enrichment claim, any increase in the collateral

12  available to satisfy TFC's claim against Turner Company that resulted from

13  Starlite's shipment of calendars does not give rise to an unjust enrichment claim

14  against TFC.  In Knox, the secured creditor did not initiate the transaction between

15  the seller and the debtor, and the secured creditor "never asked [the seller] to

16  provide anything" to the secured creditor or the debtor.   Id. at 1367-1368.

17  Similarly, Starlite does not allege that TFC (a) initiated any transaction between

18  Starlite and Turner Company, (b) asked Starlite to provide goods or anything else

19  to TFC or Turner Company, (c) arranged any sales by Starlite to Turner Company,

20  (d) introduced Starlite to Turner Company, or (e) dictated the terms of Starlite's

21  transactions with Turner Company.  Like the plaintiff in Knox, Starlite is simply an

22  unpaid seller of goods whose claim is subordinate to the prior perfected security

23  interest of a secured creditor under Article 9 of the UCC.

24       Furthermore, if the court in Knox rejected the unjust enrichment claim even

25  when the secured creditor liquidated and sold the goods for which the plaintiff had

26  not been paid, then this Court must reject Starlite's claim against TFC even if TFC

27  collected the proceeds of Turner Company's sales of calendars for which Starlite

28  had been paid.  In addition, whether or not TFC knew that Turner Company

-21-

1   would not pay Starlite for the calendars it shipped is irrelevant. In Peerless
2   Packing, which was cited in Knox as discussed above, the court rejected the unpaid
3   sellers' argument that an unjust enrichment claim should lie against a secured
4   creditor who, "knowing it was going to foreclose on the store, allowed [the sellers]
5   to continue to deliver goods for a week before [the secured creditor] took over."
6   Id., 180 W. Va. at 270. Similarly, TFC was not required to stop Starlite from
7   continuing to ship calendars to Turner Company.[13]

8   This Court's rejection of plaintiffs' equitable claims in Weststeyn Dairy
9   further indicates that Starlite has no right to equitable relief against TFC. Not only
10  did the secured creditor in Weststeyn Dairy take plaintiffs' prepayments for goods
11  they never received from the debtor, but the court noted that the secured creditor's
12  timing of its foreclosure of the debtor's assets, after the debtor received a large
13  influx of prepayments, was "suspicious." Id., 280 F. Supp. 2d at 1088.
14  Nonetheless, the court rejected plaintiffs' unjust enrichment claim:

15        "A creditor's insisting on payment under an express legal right,
16        even if in bad faith, is not actionable. *Kruse v. Bank of*
17        *America,* 202 Cal.App.3d 38, 68, 248 Cal. Rptr. 217 (1998).
18        Plaintiffs do not show equities that override Diversified's claim
19        of priority as a perfected secured creditor under the UCC
20        priority scheme."

21        Id., 280 F. Supp. 2d at 1088.

22
23

---

24  [13] In addition, the right of a seller to reclaim goods sold to an insolvent buyer
25  [Com. Code § 2702(2)] is subject to the rights of a "good faith purchaser," which
    includes a secured creditor. Com. Code § 2702(3); see id., §§ 1201(29, 30), 2403.
26  In Shell Oil Co. v. Mills Oil Co., 717 F.2d 208, 209, 211-212 (5th Cir. 1983), the
    court held that a bank properly liquidated its borrower's assets, including goods
27  that the plaintiff sold to the borrower, notwithstanding the plaintiff's right of
    reclamation and the borrower's failure to pay for the goods. If TFC itself could
28  have liquidated and sold the calendars without regard to Starlite's reclamation
    rights, then TFC certainly was allowed to keep the sales proceeds.

-22-

This Court in <u>Weststeyn Dairy</u> also refused to impose a constructive trust on the prepayments in the hands of the secured creditor.   To obtain a constructive trust, the plaintiff must establish (i) its right to the trust property and (ii) wrongful acquisition or detention of that property by another party that is not entitled to it. <u>Id</u>., 280 F. Supp. 2d at 1084, citing <u>Communist Party v. 522 Valencia, Inc.</u>, 35 Cal. App. 4th 980, 990 (1995).   The court found that (a) plaintiffs did not continue to own the prepayments once they paid the debtor and (b) the secured creditor, by enforcing its security interest, did not wrongfully acquire or detain the prepayments, even though it knew that the prepayments had been made for goods not yet delivered.  <u>Id</u>., 280 F. Supp. 2d at 1085.  Here, Starlite did not continue to own the calendars once it shipped them to Turner Company, and TFC did not wrongfully acquire or detain the calendars or proceeds thereof by exercising its right to the sales collections and other collateral.   Accordingly, Starlite is not entitled to a constructive trust or other equitable relief against TFC.[14]

**E.      Starlite's Claims Are Barred by the <u>Noerr-Pennington</u> Doctrine.**

All of Starlite's claims against TFC are also barred to the extent that they are based on conduct relating to the TFC/Turner Action, including the CRO Order (i) requiring all collections of Turner Company's accounts receivable to be deposited in the Lockbox and (ii) sealing the court records [<u>see</u> Amended

---

[14] This Court may entertain TFC's motion to dismiss the Eighth Cause of Action, notwithstanding the State Court's order overruling TFC's prior demurrer to that claim in the original complaint.  A federal court may properly grant a defendant's motion for summary judgment even if, prior to removal, a state court denied defendant's motion, as the prior state court order is a mere interlocutory order. <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 530 (9th Cir. 2000); <u>Preaseau v. Prudential Ins. Co. of America</u>, 591 F.2d 74, 79 (9th Cir. 1979).  An order denying a motion to dismiss (or overruling a demurrer) is likewise an interlocutory order that the district court has jurisdiction to reconsider.  <u>Louen v. Twedt</u>, 2007 U.S. Dist. LEXIS 25906, *11 (E.D. Cal. Mar. 26, 2007).  Indeed, the State Court itself could have allowed TFC again to demur to the Eighth Cause of Action despite overruling TFC's prior demurrer to that claim.  <u>See</u> <u>Pavicich v. Santucci</u>, 85 Cal. App. 4th 382, 389 n.3 (2000).  Moreover, this Court may disregard earlier State Court rulings if based on state law standards that differ from the applicable standards herein.  <u>Fairbank</u>, 212 F.3d at 531-532.

-23-

Complaint, ¶¶ 18, 20, 27, 50, 80-85].  The <u>Noerr-Pennington</u> doctrine applies in federal courts to bar federal and state law claims based on actions taken or communications made in connection with litigation.   <u>United Mine Workers of America v. Pennington</u>, 381 U.S. 657, 85 S. Ct. 1585, 1593 (1965); <u>Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127, 138-145, 81 S. Ct. 523, 530-533 (1961).  All of TFC's conduct of which Starlite complains occurred on or after the commencement of the TFC/Turner Action and/or the issuance of the CRO Order, including the purported concealment thereof.  In essence, Starlite's claims are a challenge to the CRO Order and the conduct of the CRO and TFC pursuant thereto, and the claims are therefore barred by the <u>Noerr-Pennington</u> doctrine.

The doctrine in its original form held that there could be no liability under the federal antitrust laws for joint or concerted activities directed towards influencing the passage or enforcement of laws.  <u>Noerr</u>, 365 U.S. at 135-138, 81 S. Ct. at 528-530.  In <u>California Motor Transport Co. v. Trucking Unlimited</u>, 404 U.S. 508, 92 S. Ct. 609 (1972), the Supreme Court extended <u>Noerr-Pennington</u> immunity to include activities by either individuals or groups directed towards soliciting or procuring action <u>by a court</u> or administrative body.

The basis for <u>Noerr-Pennington</u> immunity is that such activities are protected by the First Amendment.  <u>See Noerr</u>, 365 U.S. at 136-138, 81 S. Ct. at 529-530 (First Amendment right of citizens to petition the government for redress of grievances); <u>California Motor Transport</u>, 404 U.S. at 510-512, 92 S. Ct. at 612 (First Amendment rights of association and petition in connection with statements made during court proceedings); <u>Eaton v. Newport Bd. of Educ.</u>, 975 F.2d 292, 297, 298 (6th Cir. 1992) (First Amendment rights of petition and freedom of speech), <u>cert. denied</u>, 508 U.S. 957, 113 S. Ct. 2459 (1993).

<u>Noerr-Pennington</u> immunity holds regardless of the defendant's intent in petitioning the government (including the judicial branch) or soliciting

-24-

governmental (including judicial) action, since the people's exercise of their First Amendment rights "cannot properly be made to depend upon their intent in doing so." Noerr, 365 U.S. at 139, 81 S. Ct. at 530; see also Pennington, 381 U.S. at 670, 85 S. Ct. at 1593 (that a party's motives are selfish is irrelevant to Noerr immunity; immunity applies "regardless of [defendant's] intent or purpose").

Thus, Noerr-Pennington immunity applies with full force to statements made in court, or activities aimed towards soliciting court action, regardless of intent, as "the right to petition extends to all departments of the Government," and "[t]he right of access to the courts is indeed but one aspect of the right of petition." California Motor Transport, 404 U.S. at 510, 92 S. Ct. at 612 (citations omitted). In fact, in California Motor Transport, the Court specifically concluded that "it would be destructive of [First Amendment] rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-à-vis their competitors." Id., 404 U.S. at 510-511, 92 S. Ct. at 612.

While the Noerr-Pennington doctrine originated in the federal antitrust context, the doctrine has been broadly applied to bar liability for other types of claims, including various state law tort claims (N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886, 890-894, 913-915, 102 S. Ct. 3409, 3414-3416, 3425-3427 (1982) (malicious interference with business); Eaton, 975 F.2d at 293, 296 (outrageous conduct); Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir. 1988), cert. denied, Dallas v. Video International Productions, Inc., 490 U.S. 1047, 109 S. Ct. 1955 (1989), cert. denied, Video International Productions, Inc. v. Warner-Amex Cable Communications, Inc., 491 U.S. 906, 109 S. Ct. 3189, 105 L.Ed.2d 697 (1989) (tortious interference with contract)).

-25-

1    Since all of Starlite's claims against TFC are based on TFC's conduct in

2    connection with the TFC/Turner Action and the CRO Order, the <u>Noerr-Pennington</u>

3    doctrine bars all of Starlite's claims.

4    Similarly, under California law, TFC's conduct is protected by the litigation

5    privilege.  Pursuant to California Civil Code Section 47(b)(2), TFC cannot be

6    liable to Starlite on any claim based on TFC's alleged concealment of, or other

7    actions taken in connection with, the TFC/Turner Action and/or the CRO Order.

8    Section 47(b)(2) provides in pertinent part that "[a] privileged publication or

9    broadcast is one made:  . . . .  (b) [i]n any . . . (2) judicial proceeding."  The

10   California Supreme Court and a long line of California authority confirm that the

11   privilege accorded by Section 47(b)(2) applies to any communication "required or

12   permitted by law in the course of a judicial proceeding to achieve the objects of the

13   litigation," even if it is "made outside the courtroom and no function of the court or

14   its officers is involved."  <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 212 (1990) (citations

15   omitted).  "The privilege applies to any communication (1) made in judicial or

16   quasi-judicial proceedings; (2) by litigants or other participants authorized by law;

17   (3) to achieve the objects of the litigation; and (4) that have some connection or

18   logical relation to the action."  <u>Id</u>., 50 Cal. 3d at 212 (citations omitted).  Moreover,

19   the privilege applies equally to acts (<u>e.g.</u>, Textron's receipt of proceeds of Turner

20   Company's receivables in accordance with its rights as secured lender and the

21   CRO Order) that are reasonably or necessarily related to the communicative

22   conduct (<u>e.g.</u>, Textron's entry into the stipulation embodied and approved by this

23   Court in the CRO Order), and to "any selected failure to disclose information"

24   (<u>e.g.</u>, Textron's alleged concealment of Turner Company's near-insolvency and the

25   TFC/Turner Action), as to communications or representations <u>per se</u>.  <u>Rusheen v.</u>

26   <u>Cohen</u>, 37 Cal. 4th 1048 (2006) (related acts); <u>Forro Precision, Inc. v. International</u>

27   <u>Business Machines Corp.</u>, 745 F.2d 1283 (9th Cir. 1984) (failures to disclose), <u>cert.</u>

28   <u>denied</u>, 471 U.S. 1130, 105 S. Ct. 2664 (1985).  The privilege is so broadly applied

-26-

that it extends to communications (or failures to communicate) and related acts taken in contemplation of litigation.  See Lerette v. Dean Witter Organization, Inc., 60 Cal. App. 3d 573 (1976).

The litigation privilege embodied in Civil Code Section 47(b)(2) is absolute, applies regardless of any alleged malice on the part of the defendant, and bars each claim alleged by Starlite against Textron here.  See Silberg, 50 Cal.3d at 212-213, 215-216 (absolute immunity extends to all torts except malicious prosecution), citing, among numerous other cases, Rosenthal v. Irell & Manella, 135 Cal. App. 3d 121 (1982) (intentional inducement of breach of contract and intentional interference with prospective economic advantage), and Pettitt v. Levy 28 Cal. App. 3d 484 (1972) (fraud, negligent misrepresentation and negligence); Forro Precision, 745 F.2d 1283 (interference with contractual relations); Hynix Semiconductor, Inc. v. Rambus, Inc., 2006 U.S. Dist. LEXIS 48884 (N.D. Cal. 2006) (unfair competition under California Business and Professions Code § 17200).   Accordingly, the entire Amended Complaint against TFC must be dismissed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CONCLUSION

For the foregoing reasons, TFC respectfully requests that the Court dismiss Plaintiff's First Amended Complaint against TFC in its entirety without leave to amend.

DATED:   January 8, 2008                    LEO D. PLOTKIN
                                            MARK D. HURWITZ
                                            LEVY, SMALL & LALLAS
                                            A Partnership Including Professional
                                            Corporations


                                            By  /s/ Leo D. Plotkin
                                                 Leo D. Plotkin
                                            Attorneys for Defendant
                                            TEXTRON FINANCIAL
                                            CORPORATION

21490-2

-28-