1  Roger M. Schrimp, State Bar No. 039379
   Kathy L. Monday, State Bar No. 209084
2  Maria Fatima Gioletti, State Bar No. 218335
   DAMRELL, NELSON, SCHRIMP,
3   PALLIOS, PACHER & SILVA
   1601 I Street, Fifth Floor
4  Modesto, CA 95354
   Telephone:  (209) 526-3500
5  Facsimile:  (209) 526-3534

6  Attorneys for Plaintiff
   Starlite Development (China) Ltd.
7

8                    UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)
10

11
   STARLITE DEVELOPMENT (CHINA)          Case No.   1:07-CV-01767-OWW-DLB
12 LTD.,

13          Plaintiff,                    **PLAINTIFF'S OPPOSITION TO
                                          DEFENDANT MCA FINANCIAL
14 vs.                                    GROUP, LTD.'S AND MORRIS C.
                                          AARON'S MOTION TO DISMISS**
15 TEXTRON FINANCIAL
   CORPORATION; MCA FINANCIAL            [F.R.C.P. 12(b)(6)]
16 GROUP, LTD., MORRIS C. AARON;
   JOHN F. TURNER & CO., INC., a
17 California corporation, JFTC, INC., a  Date:    January 28, 2008
   California corporation; and DOES 1 through  Ctrm:    3
18 20, inclusive,                         Time:    10:00 a.m.
                                          Judge:   Oliver W. Wagner
19          Defendants.
20
                                          Complaint filed: June 1, 2007
21                                        Trial Date:   TBD
22

23

24

25

26

27

28

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

# TABLE OF CONTENTS

Page (s)

Table of Authorities ................................................................................ii

I.   INTRODUCTION ...........................................................................2

II.  STATEMENT OF RELEVANT FACTS ...........................................4

III. LEGAL ARGUMENT .......................................................................7

     A.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) MOTIONS
        TO DISMISS ARE DISFAVORED AND ARE ONLY
        GRANTED IN EXTRAORDINARY CASES ..................................... 7

     B.  THE CRO SHOULD NOT BE CONSIDERED
        A TRUE JUDICIAL OFFICER OF THIS COURT ..................................9

     C.  A RECEIVER IS NOT ABSOLUTELY IMMUNE FROM
        ALLEGATIONS THAT  IT ENGAGED IN UNLAWFUL CONDUCT ...........11

     D.  A PARTY NEED NOT EXPRESSLY REFER TO A RECEIVER'S
        LACK OF JUDICIAL AUTHORITY IN ORDER TO SUSTAIN
        CLAIMS AGAINST IT .................................................................15

     E.   THE CRO'S MOTION TO DISMISS SHOULD ALSO BE DENIED
        BECAUSE FURTHER DISCOVERY IS NECESSARY TO
        DETERMINE WHETHER ABSOLUTE JUDICIAL IMMUNITY
        IS AVAILABLE TO THE CRO HERE .................................................17

IV. CONCLUSION ...............................................................................17

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

i
**TABLE OF CONTENTS**

1

## TABLE OF AUTHORITIES

2

**Page (s)**

3

**Federal Cases**

4
Allison v. California Adult Authority, 419 F.2d 822 (9th Cir. 1969) ............................   8

5
Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912 (9th Cir. 2001) .....................   8

6
Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986) ...................................................   12

7

8
Cauchi v. Brown, 51 F.Supp.2d 1014, 1016 (E.D. Cal. 1999) .....................................   8

9
Fecht v. The Price Co., 70 F. 3d 1078 (9th Cir. 1995) cert. denied, 517 U.S. 1136 (1196).....   6

10
Forrester v. White, 484 U.S. 219 (1988) ..............................................................   9

11
Gilligan v. Jamco Develop. Corp., 108 F.3d 246 (9th Cir. 1997) ................................   7

12

13
Hagestad v. Tragesser, 49 F. 3d 1430, [9th Cir. 1995]...................................   3

14
Harris v. Iorio, 922 F. Supp. 588, (M.D. Fla. 1996) ................................................   17

15
In re Stac Electronics Sec. Litig., 89 F. 3d 1399, (9th Cir. 1996) ...............................   6

16
Kamakana v. City and County of Honolulu, 447 F. 3d 1172 (9th Cir. 2006)............   3

17

18
Kohlrautz v. Oilman Participation Corp., 441 F.3d 827 (9th Cir. 2006) ...........................3, 9, 13, 14

19
Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163
(1993) ...................................................................................................   8, 16

20

21
Lucas v. Dept. of Corrections, 66 F.3d 245 (9th Cir. 1995) ......................................   16

22
MGIC Ind. Corp. v. Weisman, 803 F.2d 500 (9th Cir. 1986).............................   8

23
Nami v. Fauver, 82 F.3d 63 (3rd Cir. 1996) .........................................................   8

24
New Alaska Development Corp. v. Guetschow, 869 F.2d 1298 (9th Cir. 1989) ............. 9, 11, 14, 15

25
Pareto v. F.D.I.C., 139 F.3d 696 (9th Cir. 1998) .................................................   8, 16

26

27
Parks School of Business, Inc. v. Symington, 51 F.3d 1480 (9th Cir. 1995) ........................   8, 9

28
Schucker v. Rockwood, 846 F.2d 1202 (9th Cir. 1988) ...........................................   12

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

ii
**TABLE OF AUTHORITIES**

State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71
(2nd Cir. 2007) ................................................................................. 4,17

United States v. Redwood City, 640 F.2d 963 (9th Cir. 1981) ................................. 7, 8

United States v. White, 893 F.Supp. 1423 (C.D. Cal. 1995) .................................... 8, 16

**Statutes**

Federal Rule of Civil Procedure 12 ................................................................. 7

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 7, 8, 15

Eastern District Local Rule 66-232(a)(2) .......................................................... 10

Eastern District Local Rule 66-232(e)(2) .......................................................... 10

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

**TABLE OF AUTHORITIES**

# I

# **INTRODUCTION**

The First Amended Complaint ("FAC")[1] filed by plaintiff Starlite Development (China), Ltd. ("Starlite"), alleges actionable claims against Defendants MCA Financial Group, Ltd. and Morris C. Aaron (collectively hereinafter "the CRO"), for their collusive activity with defendants, John F. Turner & Co., Inc.,[2] and Textron Financial Corporation ("Textron"), to fraudulently induce Starlite to continue to produce, sell, and ship calendars to defendant JFTC; while concealing JFTC's insolvency; knowing full well that Textron did not intend to authorize sufficient funds to pay JFTC's debt to Starlite once the orders were shipped; and, with the intent to use the proceeds from the sale of said calendars to satisfy JFTC's debt to Textron alone.

The CRO seeks to have the Fourth and Seventh Causes of Action[3] against it dismissed from Plaintiff's FAC based on the theory of derivative judicial immunity which grants judicial officers absolute immunity for conduct within the scope of their judicial authority.  However, contrary to allegations in the CRO's moving papers, this is not "a basic collection action," and the CRO is not a typical, court-appointed neutral receiver that can avail itself of the immunity.

---

[1]     A true and correct copy of the FAC is attached as Exhibit "A" to the Request for Judicial Notice in Support of Plaintiff's Opposition To Defendant MCA Financial Group, Ltd.'s And Morris C. Aaron's Motion To Dismiss, filed and served concurrently herewith ("Starlite's RJN").

[2]     At some point, John F. Turner & Co., Inc. changed its name to JFTC, Inc., and will be referred to collectively hereinafter as "JFTC."

[3]     These claims are for Aiding and Abetting Fraud and Negligent Interference with Contractual and Economic Relationship, respectively.

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

Indeed, the CRO neglects to acknowledge in its moving papers that while it functioned much like a receiver over JFTC, [4] the nature of its appointment differs greatly from typical receiverships authorized by court order.  Receivers usually have a duty to act in the best interests of the company or property over which they are appointed, as well as in the best interests of <u>all</u> parties having a claim to the company or property.  <u>See</u> <u>Kohlrautz v. Oilman Participation Corp.</u>, 441 F.3d 827, 836 (9th Cir. 2006).  In this case, the CRO was appointed pursuant to a stipulated agreement entered into between Textron and JFTC that was then concealed from the remainder of JFTC's creditors.  In fact, the entire court record was sealed without any compelling reason or findings of fact as required pursuant to <u>Kamakana v. City and County of Honolulu</u>, 447 F. 3d 1172, 1179 (9th Cir. 2006), (citing, <u>Hagestad v. Tragesser</u>, 49 F. 3d 1430, 1434 [9th Cir. 1995].)

The CRO was obviously selected, and possibly even retained, by Textron to operate JFTC for the sole purpose of recouping Textron's investment in JFTC to the detriment of JFTC's other creditors.  The FAC clearly alleges that the CRO was not acting in the best interests of JFTC, and was not seeking to protect the interests of any of JFTC's other creditors, as a genuine receiver would.  Rather, the CRO was and is acting as agent for Textron, and as alleged in the FAC, assisted the other defendants to defraud Starlite.  Such conduct is not "judicial" in nature and can hardly be considered having proper "judicial authority" -- two exceptions to the judicial immunity rule.  Accordingly, the CRO cannot

---

[4]   Starlite has not conceded such a designation, but has merely acknowledged that the CRO serves a receiver-like function in having been hired to take management and control over JFTC.

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

3

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

avail itself of the judicial immunity defense and its motion to dismiss on that basis must be denied.

Furthermore, Starlite cannot know for certain the extent of the CRO's relationship with Textron and/or the other defendants unless and until further discovery is conducted, which provides yet another reason why the CRO's motion to dismiss should be denied. See State Employees Bargaining Agent Coalition, 494 F. 3d 71, 92 (2nd Cir. 2007) [district court properly denied motion to dismiss where further discovery was needed in order to determine whether the defendants' conduct qualified for the immunity].

## II.

## STATEMENT OF RELEVANT FACTS

Starlite had an ongoing business relationship with JFTC beginning in or around 2002 for supplies and then for the production and sale of wall and box calendars.  FAC, ¶ 13. JFTC increased its orders to Starlite in or around 2005 by approximately 240% to $1.46 million, and then in 2006 by 180% over 2005.  FAC, ¶¶ 14-15.  On January 19, 2006, JFTC placed an order to Starlite for 3.25 million calendars (plus additional box calendars), on the following payment terms:  10% before the first shipment, 30% in October, 30% in November, and the remaining 30% in December of 2006.  FAC, ¶ 15.  The total estimated unpaid debt to Starlite is over $2.6 million. FAC, ¶ 16.

Unbeknownst to Starlite, at the time JFTC placed this huge 3.25 million-calendar order, JFTC was insolvent, and JFTC's major lender, Textron, had already begun the process of foreclosing on its loans to JFTC.  FAC, ¶¶ 16, 18.  Indeed, Textron placed one of

*Damrell Nelson
Schrimp Pallios
Pacher & Silva*
A Professional
Corporation

4

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

its agents on site at JFTC in early January of 2006 in order to review and monitor JFTC's finances, and then filed two actions in this Court the following month against JFTC and its principals (*Textron v. J.F. Turner Company, et al.*, 1:06-cv-00162-OWW-LJO and *Textron v. John F. Turner, et al.*, 1:06-cv-00160-OWW-LJO ).[5]  FAC, ¶¶ 27, 18; <u>see also</u>, Notice of Motion and Motion for Appointment of Receiver; Memorandum of Points and Authorities, filed by Textron in the Textron Actions on February 16, 2006 ("Receivership Motion"), ¶ 27, 7:27-8, 7:16-19, attached as Exhibit "B" to Starlite's RJN.

Just days after filing the aforementioned action, Textron filed its Receivership Motion.  FAC, ¶ 18.  JFTC responded in opposition that it intended to file for Chapter 11 bankruptcy.  FAC, ¶ 18.  Since that scenario would certainly require Textron to share JFTC's assets with other creditors of JFTC, Textron agreed to drop its receivership motion if JFTC would stipulate to the appointment of the CRO.  FAC, ¶ 18; <u>see also</u>, Stipulation and Order Appointing Chief Restructuring Officer, for Preliminary Injunction, and for Sealing of Documents, filed herein in the above referenced actions on March 27, 2006 ("Stipulation and Order"), a true and correct copy of which is attached as Exhibit "C" to Starlite's RJN.  Pursuant to the Stipulation and Order, the CRO was and is charged, among other things, with ensuring that all receivables of JFTC are deposited into the "lockbox" that Textron unilaterally controls.  FAC, ¶ 18.

The CRO retained and directed Mark Turner of JFTC to continue to be the JFTC agent and contact person to Starlite.  For example, several months *after* the CRO had been

_____

[5]     These matters were consolidated into *Textron v. J.F. Turner Company, et al.*, 1:06-cv-00162-OWW-LJO and will be referred to collectively hereinafter as "the Textron Actions."

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S AND MORRIS C. AARON'S MOTION TO DISMISS**

*Damrell Nelson Schrimp Pallios Pacher & Silva*
A Professional Corporation

appointed, and despite JFTC's insolvency, in June of 2006, Mark Turner notified Starlite that JFTC had the "extra cash flow available" to pay what the defendants estimated the 10% pre-shipment payment would be toward the substantial 3.25 million-calendar order. FAC, ¶¶ 24, 25; see also, June 20, 2006 email correspondence from Mark Turner to Grace Lee of Starlite, a true and correct copy of which is attached as Exhibit "A" to the Declaration of Maria Fatima Gioletti in Support of Plaintiff's Opposition To Defendant MCA Financial Group, Ltd.'s And Morris C. Aaron's Motion To Dismiss ("Gioletti Decl.").[6]  In this June 20, 2006 email correspondence that is partially quoted in ¶ 25 of the FAC, Mark Turner states that "we know that you and the Starlite team is [sic] working extremely hard for us and we had a little of extra cash flow available, so we decided to forward this deposit earlier than required." Id.  To further ensure Starlite's (false) sense of security with JFTC, Textron then funded an additional payment of over $130,000, followed by another prepayment of over $62,000 in mid-June of 2006.  FAC, ¶¶ 24-25.

Notably, the CRO refrained from any direct involvement in the JFTC-Starlite exchanges until November 10, 2006, even though it had been appointed eight (8) months earlier.  FAC, ¶ 17.  Instead, Starlite believes and thereon alleges that a concerted effort was made on the part of the defendants to conceal the CRO's and Textron's control of JFTC by

---

[6]  The Court may consider this email correspondence without necessity of converting the herein motion to dismiss into a motion for summary judgment, because Starlite quoted from the email at ¶ 25, line 7, of its FAC.  It is well-settled that in ruling on a motion to dismiss, courts are permitted to consider the full texts of documents that are referenced and/or quoted only in part in the complaint, and the authenticity of this document has not been challenged.  See Fecht v. The Price Co., 70 F. 3d 1078, 1080, fn. 1 (9th Cir. 1995), cert. denied, 517 U.S. 1136 (1196); see also, In re Stac Electronics Sec. Litig., 89 F. 3d 1399, 1405, fn. 4 (9th Cir. 1996).

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

having Mark Turner continue to act as the Starlite contact person for JFTC until all of the

calendar orders were produced and shipped by Starlite.  FAC, ¶¶ 21, 23-25, 27.  Once the

product had shipped to JFTC, Textron refused to authorize payment and JFTC failed to pay

the 30% payments that were due in October, November, and December.  FAC, ¶¶ 15, 17.

Starlite alleges that the CRO had no intention to pay Starlite, and knew the funds would not

be "available" to pay Starlite, when the CRO asserted that it was working with Textron to

come up with a payment plan and that payment to Starlite was 'in the budget.'  FAC, ¶¶ 19,

22, 29.

## III.

## LEGAL ARGUMENT

**A.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) MOTIONS TO
DISMISS ARE DISFAVORED AND ARE ONLY GRANTED IN
EXTRAORDINARY CASES.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[7] challenges the

adequacy of the pleadings, and asks the court to determine whether the facts as plead

would, if established, support a valid claim for relief.  Fed. Rules Civ. Proc. R. 12.  Such

motions are generally disfavored by the courts in light of the role pleadings play in federal

practice and the liberal policy governing amendments to pleadings.  Gilligan v. Jamco

Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).  "The motion to dismiss for failure to

state a claim is viewed with disfavor and is rarely granted."  Id.  Accordingly, Rule 12(b)(6)

motions to dismiss are only to be granted in "extraordinary" cases.  United States v.

---

[7]    Any and all references to Rule or Rules in this opposition shall be to the Federal Rules of Civil
Procedure unless otherwise indicated.

*Damrell Nelson
Schrimp Pallios
Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

1   Redwood City, 640 F.2d 963, 966 (9th Cir. 1981); Cauchi v. Brown, 51 F.Supp.2d 1014,

2   1016 (E.D. Cal. 1999); United States v. White, 893 F.Supp. 1423, 1428 (C.D. Cal. 1995).

3        In reviewing a Rule 12(b)(6) motion, the court **must accept as true all material**

4   **allegations** in the complaint, as **well as all reasonable inferences that may be drawn**

5   **from them**.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); see also Leatherman v.

6   Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993);

7   United States v. White, 893 F.Supp. at 1428.  In addition, the court is required to construe

8   the complaint in a light most favorable to the plaintiff.  Parks School of Business, Inc. v.

9   Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

10       Dismissal pursuant to Rule 12(b)(6) is only appropriate where the defendant

11  demonstrates that the plaintiff cannot prove facts sufficient to support its claim.  Parks

12  School of Business, Inc. v. Symington, 51 F.3d at 1484.  The plaintiff's failure to do so

13  must be apparent from the face of the pleading, and the court must not consider outside

14  material or facts, except matters over which it can take judicial notice or documents

15  referenced in the complaint but not attached.  Arpin v. Santa Clara Valley Transp. Agency,

16  261 F.3d 912, 925 (9th Cir. 2001); see also, Cauchi v. Brown, 51 F.Supp.2d 1014, 1016-17

17  (E.D. Cal. 1999); citing, MGIC Ind. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

18       Courts do not consider whether it is possible for the plaintiff to prove its allegations

19  on a motion to dismiss, or whether possible difficulties in making such proof exist.  Nami

20  v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996).  The Third Circuit court in Nami articulated that

21  "[i]n considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately

22  prevail, only whether they are entitled to offer evidence to support their claim."  Id.; see

23  also, Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969).

24

25

26

27

28

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

8
**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

The CRO argues that Starlite is not entitled to the relief it seeks in the FAC against the CRO, because all of the actions complained of in the FAC were authorized (and thereby immunized) pursuant to the Stipulation and Order.  Accordingly, the CRO's motion should be denied unless the CRO demonstrates that it is protected by such immunity and that Starlite cannot provide facts sufficient to support is claims.  See Parks School of Business, Inc. v. Symington, at 1484.  As discussed in greater detail below, the CRO should not be considered a true "arm of the court" in light of the nature of its appointment and its relationship with Textron and JFTC.  Furthermore, even if the CRO is deemed a true receiver, given the allegations in the FAC, the CRO has not met its burden to demonstrate that it can avail itself of the judicial immunity defense, since its alleged misconduct cannot be considered "judicial" in nature or authority.

**B.     THE CRO SHOULD NOT BE CONSIDERED A TRUE JUDICIAL OFFICER OF THIS COURT.**

New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1303 (9th Cir. 1989), is the seminal case that extended the absolute official immunity enjoyed by judges to court-appointed receivers as court officers.  Citing the Supreme Court decision of Forrester v. White, 484 U.S. 219 (1988), the Ninth Circuit in New Alaska recognized that a "'receiver functions as an arm of the court by making decisions about the operation of a business that the judge otherwise would have to make.'"  869 F.2d at 1303, fn. 6.  However, it is well settled that a "receiver must not exceed the limits of the authority granted by the court and **must act for the benefit of all persons interested in the property**."  Kohlrautz, 441 F.3d at 836; (emphasis added).  The receiver in Kohlrautz was found personally liable for exceeding his authority by acting partially toward one of the parties to the litigation.  Id. at 836.

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

Pursuant to the Stipulation and Order, the Court appears not to have retained jurisdiction to review, monitor, and/or supervise the CRO's conduct.  Under the Local Rules of this District, a "receiver" is defined as "any receiver appointed either after the giving of (i) at least the notice of hearing upon the motion for appointment of receiver required by L.R. 78-230, or (ii) such lesser notice of hearing on the motion as may be agreed to by the party sought to be subjected to the receivership and the Court."  E.D. L.R., 66-232(a)(2).  Eastern District Local Rule 66-232(e)(2) further requires detailed reports from the receiver annually and/or as directed by the Court, which the Court will either accept or reject.  There is no language in the Stipulation and Order remotely analogous to this provision of the Local Rules that would provide a check of the CRO's conduct.  Furthermore, § 8 of subsection "B" of the Stipulation and Order entitled "Appointment of Chief Restructuring Officer," provides a waiver of liability for the CRO as follows:

> The CRO shall bear no personal liability for any actions or omissions which the CRO in his or its good faith business judgment believes to be in conformity with the provisions of this Stipulation.

See, Exh. "C" to Starlite's RJN, 3:17-19.  If the CRO was a true "arm of the court" with guaranteed immunity under the official or judicial immunity doctrine, there certainly would be no purpose to expressly add the aforementioned immunity clause in the Stipulation and Order.

Instead of the CRO being obligated to JFTC and **all** of its other creditors, as would have been required of a true receiver, Textron was able to gain JFTC's stipulation to insure that Textron's interests would alone be protected by the CRO.  Starlite alleges that the

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

10

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

CRO's main function was to serve Textron's interests alone, including ensuring that all receivables of JFTC were shuttled to the lockbox controlled by Textron.  FAC, ¶ 18; <u>see also</u>, Stipulation and Order, 1:20-26; 2:4-17.  As alleged in Starlite's FAC, all of the Defendants knew that the Starlite produced calendars comprised the major source of JFTC's receivables.  FAC, ¶ 26.  Accordingly, no one notified Starlite of the "lockbox" arrangement nor of the appointment of the CRO until after the orders had shipped and Mark Turner could no longer field Starlite's increasingly more insistent requests for the past due payments.  FAC ¶¶ 17 and 20.  The CRO was therefore clearly acting partially toward Textron.  Thus, the CRO should not be able to avail itself of the title of "receiver" when convenient to dodge personal liability, while failing to abide by the other fiduciary obligations of a true receivership, (i.e., to protect the interests of all parties interested in JFTC).

## C.     A RECEIVER IS <u>NOT</u> ABSOLUTELY IMMUNE FROM ALLEGATIONS THAT IT ENGAGED IN UNLAWFUL CONDUCT.

Even if the CRO is deemed an "arm of the court," the CRO nonetheless cannot avail itself of the derivative judicial immunity defense under the facts alleged in the FAC.  The CRO relies heavily on the Ninth Circuit's <u>New Alaska</u> decision in support of its claim of absolute judicial immunity as a court-appointment receiver.  869 F.2d 1298.  However, the court in <u>New Alaska</u> made clear that judicial immunity is <u>not</u> absolute, and further refused to extend the immunity with regard to allegations that the receiver stole assets of the estate and slandered one of the parties.  <u>Id.</u> at 1304.  The court found that such alleged wrongs are not "judicial acts."  <u>Id.</u>  Moreover, the United States Supreme Court in the <u>Forrester</u>

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

decision set forth that "[o]fficials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy." 484 U.S. at 224.

The plaintiffs in <u>New Alaska</u> alleged that the court-appointed receiver of a marital estate obtained gems owned by the company that the receiver failed to return and then later mysteriously reported stolen, and that the receiver slandered the husband by calling him "my ward." <u>Id.</u> at 1299-1300.  The court in <u>New Alaska</u> explained that although a judge has broad subject matter jurisdiction, he loses absolute immunity when his actions are in **clear absence of all jurisdiction** or when he performs an act that **is not judicial in nature**.[8] <u>Id.</u> at 1302 (emphasis added); citing, <u>Schucker v. Rockwood</u>, 846 F.2d 1202, 1204 (9th Cir. 1988), and <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1075 (9th Cir. 1986).  The court in <u>New Alaska</u> further found that **"**[b]y contrast, **we have not heretofore found allegations of theft and slander themselves to be judicial acts**," and the receiver was not able to avail himself of the judicial immunity defense as to those claims.[9] <u>Id.</u> at 1304 (emphasis added).

The CRO argues that according to <u>New Alaska</u>, "malice or corrupt motive" in the performance of judicial acts are insufficient to deprive a judge (or receiver) of absolute

---

[8]  The husband in <u>New Alaska</u> filed actions against both the receiver and the judge who appointed him; all claims against the judge were dismissed when the court found the judge's conduct in appointing the receiver was well within his jurisdiction and judicial authority.  869 F.2d at 1302.

[9]  The receiver was granted judicial immunity in part as to the allegations that his fees were unjustified and that he negligently mismanaged the estate.  <u>Id.</u> at 1304.

*Damrell Nelson Schrimp Pallios Pacher & Silva* A Professional Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S AND MORRIS C. AARON'S MOTION TO DISMISS**

1   immunity." See New Alaska, 869 F.2d at 1304.  However, the New Alaska court expressly

2   declined to accept that argument as to the claims of theft and slander explaining as follows:

3

4       Our decision in Ashelman instructs that a threshold inquiry is whether 'the
    precise act is a normal judicial function.' (Citations omitted.)  **Certainly the**

5       **'precise act' of a receiver pilfering corporate assets is not normally**
    **performed by a court-appointed receiver**.  Unlike the cases where corrupt

6       motive underlies performance of a judicial act, the corruption appellants
    allege is the act itself-theft.  In addition, [the receiver's] alleged slander of

7       [the husband] by calling him 'my ward' was not a function intimately
    connected with his receivership duties.  (Citations omitted.)  . . . .

8       Accordingly, we decline to hold that [the receiver] is absolutely immune
    from allegations that he stole New Alaska's assets or slandered [the

9       husband].

10

11   Id. at 1304-05; (emphasis added).

12

13       The court in Kohlrautz also recognized that a "receiver may be personally liable if

14   he or she acts outside the authority granted by the court." Kohlrautz, 441 F.3d at 836.  In

15   Kohlrautz, the court-appointed receiver of a marital estate, at the behest of the wife, filed an

16

17   action in Nevada state court against one of the companies the husband held an interest in.

18   Id. at 89-30.  That company removed the action to federal court and filed a counterclaim

19   against the receiver alleging tortuous abuse of process in assisting the wife to bring the suit.

20

21   Id. at 830.  The receiver moved for summary judgment based on the defense of official

22   immunity as a court-appointed receiver.  Id.  The Ninth Circuit in Kohlrautz decided that

23   the immunity rules of the state of Texas[10] governed and then determined that the "evidence

24

25   in the record, when viewed in the light most favorable to [the plaintiff], supported the

26   _____

27   [10]    The receiver in Kohlrautz had been appointed in a Texas-state marital dissolution action, and the
    Ninth Circuit determined that based on the facts in that case, the immunity rules of the State of

28       Texas applied.  441 F.3d at 830.  However, the result in Kohlrautz was the same as the district

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S**
**AND MORRIS C. AARON'S MOTION TO DISMISS**

1  plaintiff's claims that the receiver acted outside the scope of his authority." Id.  The

2  Kohlrautz court cited evidence that the receiver "acted partially" toward the wife, such as

3  "providing her legal advice and accepting loans and advances from her," as well as having

4  made *misrepresentations* to the court in order to bring the Nevada suit. Id. at 836.  The

5  court found these acts cast doubt on the judicial immunity defense and provided sufficient

6

7  basis for denying summary judgment. Id. at 836-37.

8

9          Therefore, as in New Alaska and Kohlrautz, the allegations in the FAC that the CRO

10  engaged in unlawful and fraudulent activity should be sufficient to defeat the immunity

11  defense raised by the CRO.  Indeed, in Kohlrautz, the receiver was denied the immunity for

12  conduct akin to the CRO's here, i.e., aiding one of the parties to commit an unlawful act

13

14  (malicious prosecution) against one of the other parties.  Accepting the allegations in the

15  FAC as true, the Court must deny the CRO's motion to dismiss, because Starlite has

16

17  alleged that the CRO aided and abetted fraudulent activity on the part of Textron and JFTC,

18  and that it knowingly interfered with Starlite's contractual and economic relationship with

19  JFTC.  Such conduct is unlawful and not normally performed by a court-appointed

20

21  receiver.  Furthermore, given Starlite's allegations, the Court can infer the CRO was acting

22  partially toward Textron, at the very least.  Moreover, as in Alaska, 869 F.2d at 1304-05,

23  the corruption Starlite alleges against CRO is the conduct itself, not merely "malice or

24

25  corrupt motive."  Accordingly, the CRO cannot demonstrate that it is entitled to the

26  absolute judicial immunity defense.

27  _____

28
        court's when it applied the federal common law on immunity and held "there were triable questions
        of fact as to whether [the receiver] committed acts outside his authority." Id.

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

14

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

**D.     A PARTY NEED NOT EXPRESSLY REFER TO A RECEIVER'S LACK OF JUDICIAL AUTHORITY IN ORDER TO SUSTAIN CLAIMS AGAINST IT.**

There is no technical requirement in this District that a party challenging a receiver's actions must use magical words in the complaint alleging the lack of immunity, i.e., "outside of the court's authority or jurisdiction," and/or that conduct was "non-judicial." In fact, the Ninth Circuit in <u>New Alaska</u> specifically addressed this issue as follows:

> In the <u>Property Management</u> case, the eleventh circuit held that a receiver appointed by a state court to manage the affairs of a securities firm was absolutely immune from claims that he defamed the firm and converted and embezzled corporate assets during the receivership.  Despite these allegations of corporate plundering, the court strictly construed a plaintiff's pleading obligations and affirmed a Rule 12(b)(6) motion to dismiss due to plaintiff's failure to "expressly allege in the complaint that [the receiver] was not acting pursuant to the orders of the appointing judge."  It is unclear, therefore, whether the court would have accepted plaintiff's allegations as piercing the receiver's judicial immunity had plaintiff made the further allegation concerning judicial authorization.  **It is far from clear why the court faulted the plaintiff for not alleging that the receiver's theft was not court-authorized.  Certainly no court is empowered to permit a receiver to steal corporate assets.**

<u>New Alaska</u>, 869 F.2d at 1305, fn.9; (emphasis added).

In other words, a party should not be deprived of its day in court against a judicial officer when the complaint sufficiently alleges the acts that constitute the abuse of authority.  Starlite has so alleged in its FAC.  Furthermore, as noted in <u>New Alaska</u>, no court is empowered to permit a receiver to aid and abet fraud and the interference with the contractual and economic relationship of others.

As noted above, in reviewing the herein Rule 12(b)(6) motion, the court must accept as true all material allegations in the FAC, as well as all reasonable inferences that may be

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

drawn from them.  Pareto, 139 F.3d at 699; Leatherman, 507 U.S. at 164; United States v. White, 893 F.Supp. at 1428.  Starlite alleges in its FAC that the CRO intentionally concealed its role at JFTC until November 10, 2006, even though it had been appointed CRO eight (8) months earlier (FAC, ¶ 17); that a concerted effort was made on the part of the defendants (including the CRO) to conceal JFTC's insolvency and Textron's control of JFTC, until such time as Starlite produced and shipped JFTC's calendar orders (FAC ¶¶ 16, 17, 18, 20, 21, 22); that the CRO falsely assured Starlite in December of 2006 that the CRO was working with Textron to "come up with the funds" and that payment to Starlite had always been "in the budget," when the CRO knew at that time that JFTC had no funds and that Textron had no intent to pay Starlite (FAC, ¶¶ 19, 28); and that the CRO "substantially assisted" Textron to convert funds from the sale of Starlite's calendars to itself (FAC, ¶ 29).  Furthermore, in the Fourth Cause of Action of the FAC, Starlite specifically alleges that the CRO's "actions and inactions did substantially assist [JFTC] in the commission of fraud." FAC ¶ 56 (12:1-2).  In addition, in the Seventh Cause of Action against the CRO, Starlite specifically alleges that in doing the acts outlined above, "Defendants" (which includes the CRO), negligently caused disruption to the contractual and economic relationship between Starlite and [JFTC]."  FAC, ¶ 76 (14:14-15).  These are certainly not actions within a court's jurisdiction or authority.[11]

---

[11]    However, if the court determines that express language relating to the receiver's lack of jurisdiction or judicial authority is required, such a technical matter can easily be remedied by a minor amendment to the FAC.  Leave to amend is broadly granted and must be granted unless it is clear that amendments cannot cure the complaint's deficiencies.  Lucas v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).  Starlite should therefore be granted leave to amend in order to include the aforementioned "magic" language if the Court requires it.

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S AND MORRIS C. AARON'S MOTION TO DISMISS**

**E.   THE CRO'S MOTION TO DISMISS SHOULD ALSO BE DENIED BECAUSE FURTHER DISCOVERY IS NECESSARY TO DETERMINE WHETHER ABSOLUTE JUDICIAL IMMUNITY IS AVAILABLE TO THE CRO HERE.**

The standard on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail in its theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  Harris v. Iorio, 922 F. Supp. 588, 590 (M.D. Fla. 1996).  In State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 90-91 (2nd Cir. 2007), the district court was found to have properly denied a motion to dismiss based on qualified legislative immunity where it found further discovery was needed to determine whether or not the defendant's conduct was substantively legislative.

Similarly here, since further discovery may be needed to determine whether or not the CRO's conduct can be considered "judicial" in nature, the CRO's motion must be denied.  Discovery into communications by and between the CRO and Textron and/or JFTC, among other things, may evidence further conduct by the CRO acting in concert with these defendants to commit the acts complained of in the FAC.

## IV.

## <u>CONCLUSION</u>

Based upon the foregoing, Starlite respectfully requests that the CRO's Rule 12(b)(6) Motion to Dismiss be denied, or in the alternative, that Starlite be granted leave to

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S AND MORRIS C. AARON'S MOTION TO DISMISS**

1    amend its FAC to include the specific technical language regarding the CRO's lack of

2    judicial immunity.

3
                                              DAMRELL, NELSON, SCHRIMP,
4                                               PALLIOS, PACHER & SILVA

5

6    Date:  January 11, 2008              By: _Maria Fatima Gioletti_
7                                              Kathy L. Monday
                                              Maria Fatima Gioletti
8                                              Attorneys for Plaintiff
9                                              Starlite Development (China) Ltd.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S
AND MORRIS C. AARON'S MOTION TO DISMISS**

**PROOF OF SERVICE**

I am a citizen of the United States and am employed in Stanislaus County.  I am over the age of eighteen (18) years and not a party to this action; my business address is 1601 1 Street, Modesto, CA 95354.

On the date set forth below, I served the following documents:  **PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S AND MORRIS C. AARON'S MOTION TO DISMISS,** by placing a true copy thereof enclosed in a sealed envelope and served in the manner and /or manners described below to each of the parties herein and addressed as follows:

Mark Hurwitz/Leo D. Plotkin
Levy, Small & Lallas
815 Moraga Drive
Los Angeles, California  90049-1633
Facsimile (310) 471-7990

Jeff Singletary
Snell & Wilmer
600 Anton Boulevard, Suite 1400
Costa Mesa, California  92626-7689
Facsimile (714) 427-7799

Christopher H. Bayley (*Pro Hac Vice*)
Snell & Wilmer
One Arizona Center
Phoenix, Arizona  85004-2202
*Facsimile (602) 382-6070*

    X       BY MAIL:  I caused such envelope(s) to be deposited in the mail at my business address, addressed to the addressee(s) designated.  I am readily familiar with DAMRELL, NELSON, SCHRIMP, PALLIOS, PACHER & SILVA practices for collection and processing of correspondence and pleadings for mailing.  It is deposited with the United States Postal Service on that same day in the ordinary course of business.

            BY HAND DELIVERY:  I caused such envelope(s) to be delivered by hand to the addressee(s) designated.

            BY OVERNIGHT COURIER SERVICE:  I caused such envelope(s) to be delivered via overnight courier service to the addressee(s) designated.

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S AND MORRIS C. AARON'S MOTION TO DISMISS**

_____   BY FACSIMILE:  I caused said document to be transmitted to the telephone number(s) of the addressee(s) designated.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Modesto, California, on January ___41___, 2008.

_Liz Welsch_

Liz Welsch

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT MCA FINANCIAL GROUP, LTD.'S AND MORRIS C. AARON'S MOTION TO DISMISS**