1  Roger M. Schrimp, State Bar No. 039379
   Kathy L. Monday, State Bar No. 209084
2  Maria Fatima Gioletti, State Bar No. 218335
   DAMRELL, NELSON, SCHRIMP,
3   PALLIOS, PACHER & SILVA
   1601 I Street, Fifth Floor
4  Modesto, CA 95354
   Telephone:  (209) 526-3500
5  Facsimile:   (209) 526-3534

6  Attorneys for Plaintiff
   Starlite Development (China) Ltd.

7

8              **UNITED STATES DISTRICT COURT**

9

        **FOR THE EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)**

10

11

12  STARLITE DEVELOPMENT (CHINA)        Case No.   1:07-CV-01767-OWW-DLB
    LTD.,

13         Plaintiff,                   **PLAINTIFF'S OPPOSITION TO**
                                        **DEFENDANT TEXTRON FINANCIAL**
14  vs.                                 **CORPORATION'S MOTION TO**
                                        **DISMISS FIRST AMENDED**
15  TEXTRON FINANCIAL                   **COMPLAINT**
    CORPORATION; MCA FINANCIAL
16  GROUP, LTD., MORRIS C. AARON;       [F.R.C.P. 12(b)(6)]
    JOHN F. TURNER & CO., INC., a
17  California corporation, JFTC, INC., a
    California corporation; and DOES 1 through   Date:    March 10, 2008
18  20, inclusive,                      Ctrm:    3
                                        Time:    10:00 a.m.
19         Defendants.                  Judge:   Oliver W. Wagner

20

21                                      Complaint filed: June 1, 2007
                                        Trial Date:   TBD
22

23

24

25

26

27

28

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

## TABLE OF CONTENTS

Page (s)

Table of Authorities ................................................................. iii

I. INTRODUCTION ................................................................. 1

II. STATEMENT OF RELEVANT FACTS ................................................. 3

III. LEGAL ARGUMENT ............................................................. 6

    A. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) MOTIONS
       TO DISMISS ARE DISFAVORED AND ARE ONLY
       GRANTED IN EXTRAORDINARY CASES ............................... 6

    B. TEXTRON'S STATUS AS A SECURED CREDITOR UNDER
       ARTICLE 9 OF THE UCC DOES NOT ABSOLVE IT OF
       LIABILITY UNDER EQUITABLE PRINCIPALS SUCH
       AS UNJUST ENRICHMENT ............................................ 8

          1. The UCC Authorizes Starlite's Equitable
            Claims Against Textron,  Because Textron
            Encouraged JFTC's Debt to Starlite And
            Benefited From Starlite's Production and
            Shipment of the Calendars, Which Were
            Necessary to the Preservation of Textron's
            Collateral in JFTC ............................................ 8

          2. Weststeyn Dairy Does Not Govern Here ................... 11

    C. STARLITE IS NOT REQUIRED TO ALLEGE FRAUD WITH
       SPECIFICITY WITH REGARD TO ITS THIRD CAUSE OF
       ACTION, BUT REGARDLESS, IT HAS ALLEGED ITS CLAIM
       AGAINST TEXTRON FOR AIDING AND ABETTING FRAUD
       WITH SUFFICIENT PARTICULARITY ............................... 14

    D. STARLITE'S INTERFERENCE CLAIMS AGAINST TEXTRON ARE
       ACTIONABLE AND SUFFICIENTLY PLED IN THE FAC ............ 16

          1. Starlite Has Stated a Claim for Intentional Interference
            With Economic Advantage As Set Forth in The Fifth
            Cause of Action of The FAC ............................... 16

          2. The Sixth Cause of Action for Intentional Interference
            with Contract in The FAC is Also Sufficiently Stated

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

i

TABLE OF CONTENTS

to Withstand Dismissal ............................................ 17

      3.  Starlite's Allegations of Negligent Interference with  Contractual and Economic Relationship in The Seventh Cause of Action Are Sufficiently Stated to Withstand Dismissal .......................................... 20

      4.  Textron's Conduct Was NOT Privileged........................ 21

E.  TEXTRON'S DOMINATION AND CONTROL OVER JFTC CREATED A DUTY NOT ONLY FROM TEXTRON TO JFTC, BUT ALSO TO JFTC'S OTHER CREDITORS, INCLUDING STARLITE ........................... 22

F.  TEXTRON IS NOT PROTECTED BY THE NOERR-PENNINGTON DOCTRINE NOR THE LITIGATION PRIVILEGE ....................... 24

      1.  The Noerr-Pennington Doctrine Is Inapplicable Here .......... 24

      2.  The Litigation Privilege Does Not Bar Starlite's Action ............................................................. 26

IV. CONCLUSION ................................................................. 27

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

ii

**TABLE OF CONTENTS**

1

# <u>TABLE OF AUTHORITIES</u>

2
<b><u>Page (s)</u></b>

3
## <u>Federal Cases</u>

4
<u>Action Apartment Ass'n, Inc. v. City of Santa Monica</u>, 41 Cal. 4th 1232 (2007) ......... 26

5
<u>Albertson v. Raboff</u>, 46 Cal. 2d 375 (1956) ...................................................... 26

6
<u>Allison v. California Adult Authority</u>, 419 F.2d 822 (9th Cir. 1969) .................... 8

7

8
<u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912 (9th Cir. 2001) ............... 7

9
<u>Augustine v. Trucco</u>, 124 Cal. App. 2d 229 (1954)............................................. 19

10
<u>Buckaloo v. Johnson</u>, 14 Cal. 3d 815 (1975) ...................................................... 16

11
<u>Cauchi v. Brown</u>, 51 F.Supp.2d 1014, 1016 (E.D. Cal. 1999) ............................... 7

12

13
<u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164 (1994) ......... 14

14
<u>Coffman v. Kennedy</u>, 74 Cal. App. 3d 28 (1977) ................................................. 14

15
<u>Commons v. Schine</u>, 35 Cal. App. 3d 141 (1974) ................................................. 2

16
<u>Credit Managers Association v. Superior Court</u>, 51 Cal. App. 3d 353 (1975) .............. 2

17
<u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376 (1995) ................... 16

18

19
<u>Fecht v. The Price Co.</u>, 70 F. 3d 1078 (9th Cir. 1995) cert. denied, 517 U.S. 1136 (1196).. 5

20
<u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520 (N.D. Cal., 2000) ........................... 19

21
<u>Gerard v. Ross</u>, 204 Cal.App. 3d 968 (1988) ...................................................... 15

22
<u>Gilligan v. Jamco Develop. Corp.</u>, 108 F.3d 246 (9th Cir. 1997) ............................ 7

23
<u>Greenly v. Sara Lee Corp.</u>, 2006 WL 3716769, 4 (E.D. Cal. 2006) ......................... 2

24

25
<u>Gruenberg v. Aetna Ins. Co.</u>, 9 Cal. 3d 566 (1973) ............................................... 26

26
<u>Hagestad v. Tragesser</u>, 49 F. 3d 1430, [9[th] Cir. 1995]............................................ 26

27
<u>Home Ins. Co. v. Zurich Ins. Co.</u>, 96 Cal. App. 4th 17 (2002) ............................... 26

28
<u>In re Stac Electronics Sec. Litig.</u>, 89 F. 3d 1399, (9th Cir. 1996) ............................ 5

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

iii
**TABLE OF AUTHORITIES**

J'Aire Corp. v. Gregory, 24 Cal. 3d 799 (1979) ………………………………… 20

Kamakana v. City and County of Honolulu, 447 F. 3d 1172 (9th Cir. 2006)……………. 26

Kimmel v. Goland, 51 Cal. 3d 202 (1990) …………………………………………… 26

Knox v. Phoenix Leasing Incorporated, 29 Cal. App. 4th 1357 (1994) ………………… 10

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003) ………………… 16

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993) ……………………………………………………………………………… 7

LiMandri v. Judkins, 52 Cal. App. 4th 326, 341 (1997) ……………………………… 16

Lucas v. Dept. of Corrections, 66 F.3d 245 (9th Cir. 1995) ………………………… 19

MGIC Ind. Corp. v. Weisman, 803 F.2d 500 (9th Cir. 1986)…………………………... 7

Nami v. Fauver, 82 F.3d 63 (3rd Cir. 1996) …………………………………………… 7

Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101 (C.D. Cal. 2003) …… 14

Ninth Dist. Prod. Credit Assn. v. Ed Duggan, Inc., 821 P. 2d 788 (1991) ……………… 1

Pareto v. F.D.I.C., 139 F.3d 696 (9th Cir. 1998) ……………………………………… 7

Parks School of Business, Inc. v. Symington, 51 F.3d 1480 (9th Cir. 1995) …….…......... 7

Pension Trust Fund v. Federal Ins. Co., 307 F. 3d 944 (9th Cir. 2002) …………………... 2

Producers Cotton Oil Co. v. Amstar Corp., 197 Cal. App. 3d 638 (1988) ……………… 1

Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993) ……… 25

Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th 26 (1998) ……………………… 21

Saunders v. Superior Court, 27 Cal. App. 4th 832 (1994) ……………………………… 14

SCEcorp v. Superior Court, 3 Cal. App. 4th 673 (1992) …………………………….. 20

Shamblin v. Berge, 166 Cal. App. 3d 118 (1985) ……………………………………… 18

Silberg v. Anderson, 50 Cal. 3d 205 (1990) …………………………………………… 26

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

_Theofel v. Farey-Jones_ 359 F. 3d 1066 (9th Cir. 2004) ............................................ 24

_United States v. Redwood City_, 640 F.2d 963 (9th Cir. 1981) ............................... 7

_United States v. Vaccerella_, 735 F. Supp. 1421 (S.D. Ind. 1990) ........................... 23

_United States v. White_, 893 F.Supp. 1423 (C.D. Cal. 1995) ................................ 7

_Valdez v. J. D. Diffenbaugh Co._, 51 Cal. App. 3d 494 (1975) .............................. 20

_Weststeyn Dairy_, 280 F. Supp.2d 1044 (E.D. Cal. 2003) .................................... 2

_Woods v. Fox Broadcasting Sub., Inc._, 129 Cal. App. 4th 344 (2005) .................... 2

_Wynn v. National Broadcasting Co., Inc._, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) ...... 19

**Statutes**

Cal. Comm. Code § 1103(b) ..................................................................... 9

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 6

Rest. Torts 2d, § 876(b), (c) ..................................................................... 14

_Damrell Nelson_
_Schrimp Pallios_
_Pacher & Silva_
A Professional
Corporation

# I

# **INTRODUCTION**

The First Amended Complaint ("FAC")[1] filed by plaintiff Starlite Development (China), Ltd. ("Starlite") alleges actionable claims against defendant Textron Financial Corporation ("Textron") for its conduct in aiding and abetting defendant John F. Turner & Company, Inc. ("JFTC"),[2] to commit fraud against Starlite; intentionally interfering with Starlite's economic advantage; intentionally interfering with Starlite's contractual relationship with JFTC; negligently interfering with Starlite's contractual and economic relationships with JFTC; and for unjust enrichment.

Contrary to Textron's assertions, Textron is not immunized from those claims simply because of its status as a secured creditor of JFTC under the Uniform Commercial Code ("UCC"). The UCC does not protect secured creditors from allegations of wrongful activity such as aiding and abetting fraud. Furthermore, another recognized exception to the UCC's priority scheme applies here. Said exception allows an unsecured creditor to pursue equitable claims against a secured creditor where, as here, the secured creditor initiated or <u>encouraged the transaction</u> by which the unsecured creditor supplied goods to the debtor, and where those goods were <u>necessary to the preservation of the secured creditor's collateral</u>. See Producers Cotton Oil Co. v. Amstar Corp., 197 Cal. App. 3d 638, 658, 660 (1988); Ninth Dist. Prod. Credit Assn. v. Ed Duggan, Inc., 821 P. 2d 788, 795 (1991) ("Duggan"). Accordingly, although Textron may have been entitled to pursue its secured interest in JFTC, it was not entitled to encourage Starlite to perform on such a large and expensive contract order (over $2 million), without either paying for said goods or informing Starlite that it did not intend to pay for the goods. See Duggan, 821 P. 2d at 798.

---

[1]  A true and correct copy of the FAC is attached as Exhibit "A" to the Request for Judicial Notice in Support of Plaintiff's Opposition To Defendant Textron Financial Corporation's Motion To Dismiss First Amended Complaint, filed and served concurrently herewith ("Starlite's RJN").

[2]  At some point, John F. Turner & Co., Inc. changed its name to JFTC, Inc., and will be referred to collectively hereinafter as "JFTC."

1

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   As alleged particularly in the FAC, by funding the "early" payments to Starlite, and by its

2   other conduct, Textron was an active participant in encouraging the transaction(s) with

3   Starlite that resulted in substantial damages to Starlite.

4        Textron cannot escape liability for Starlite's interference claims by arguing it had no

5   contractual relationship and owed no duty of care to Starlite.  It is well-established that

6   when a secured creditor, such as Textron here, unduly dominates and controls a debtor, a

7   duty of care arises not only to the debtor, but also to the debtors <u>other creditors</u> as well.  <u>See</u>

8   <u>Commons v. Schine</u>, 35 Cal. App. 3d 141, 144-45 (1974); <u>Credit Managers Association v.</u>

9   <u>Superior Court</u>, 51 Cal. App. 3d 353, 360, 361 (1975); and <u>Pension Trust Fund v. Federal</u>

10  <u>Ins. Co.</u>, 307 F. 3d 944, 955 (9th Cir. 2002).

11       Moreover, Textron misstates the law with regard to its assertion that a cause of

12  action for negligent interference with contract "does not exist under California law."  <u>See</u>

13  Textron's MPA in Support of Motion to Dismiss Plaintiff's FAC filed and served herein on

14  January 8, 2008, 2:24-28.[3]  Indeed, such a cause of action is well-recognized in California

15  law and quite recently in this very Court.  <u>See</u> <u>Woods v. Fox Broadcasting Sub., Inc.</u>, 129

16  Cal. App. 4th 344, 350 (2005) and <u>Greenly v. Sara Lee Corp.</u>, 2006 WL 3716769, 4 (E.D.

17  Cal. 2006).  What is more, Textron's argument that its actions did not cause JFTC to fail to

18  perform an obligation it otherwise would have performed is disingenuous especially given

19  the fact that the basis of its earlier lockbox arrangement and receivership motion included

20  that JFTC paid Starlite what Textron termed "Diverted Collections" instead of paying

21  Textron.

22       Further Textron cannot be allowed to escape liability here by merely asserting

23  federal and state litigation privileges.  Textron's *conduct* in aiding and abetting fraud was

24  not communicative in nature, and its concealment stipulation of the Textron Actions was

---

26  [3]    It is perplexing that Textron would assert that negligent interference claims do not exist under
27  California law, yet refer to the same later in its brief when it quotes <u>Weststeyn Dairy</u>, 280 F. Supp.
    2d  (E.D. Cal. 2003) for the proposition that "'negligent interference may be asserted only where the
28  defendant owes the plaintiff a duty of care.'"  <u>See</u> Textron's Motion, 13:10-14.

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL**
**CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

1 objectively baseless as no factual basis or grounds were found or articulated in the

2 stipulated order.

3      In sum, Textron would like the Court to treat Starlite's FAC as a run-of-the-mill

4 collection action against JFTC.  It is not!  The allegations in the FAC (which are to be

5 accepted as true for purposes of a Rule 12(b)(6)[4] motion to dismiss), demonstrate at the

6 very least, that Textron exerted a tremendous amount of control over JFTC; that Textron

7 could have authorized payment to Starlite from JFTC "receivables" but it did not and had

8 no intention to when the CRO assured Starlite that its payment was "in the budget;" that

9 had Textron not approved and forwarded the pre-shipment and "early payments" to Starlite,

10 Starlite would never have continued to produce and ship the calendars to JFTC to its

11 detriment; and that JFTC's sale of the Starlite produced calendars constituted JFTC's major

12 revenue source, that was usurped by Textron for its own benefit alone.

## II.

## STATEMENT OF RELEVANT FACTS

15      Starlite had an ongoing business relationship with JFTC beginning in or around 2002

16 first for supplies and then for the production and sale of wall and box calendars.  FAC, ¶

17 13.  JFTC increased its orders to Starlite in or around 2005 by approximately 240% to

18 $1.46 million, and then in 2006 by 180% over 2005.  FAC, ¶¶ 14-15.  On January 19, 2006,

19 JFTC placed an order to Starlite for 3.25 million calendars (plus additional box calendars),

20 on the following payment terms:  10% before the first shipment, 30% in October, 30% in

21 November, and the remaining 30% in December of 2006.  FAC, ¶ 15.  The total estimated

22 unpaid debt to Starlite is over $2.6 million.  FAC, ¶ 16.

23      Unbeknownst to Starlite, at the time JFTC placed this huge 3.25 million-calendar

24 order, JFTC was insolvent, and JFTC's major lender, Textron, had already begun the

25 process of foreclosing on its loans to JFTC.  FAC, ¶¶ 16, 18.  Indeed, Textron placed one of

26 its agents on site at JFTC in early January of 2006 in order to review and monitor JFTC's

27 _____

28 [4]      All references to Rule or Rules hereinafter shall refer to the Federal Rules of Civil Procedure unless

*Damrell Nelson
Schrimp Pallios
Pacher & Silva*
A Professional
Corporation

3

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

finances, and then filed two actions in this Court the following month against JFTC and its principals (*Textron v. J.F. Turner Company, et al.*, 1:06-cv-00162-OWW-LJO and *Textron v. John F. Turner, et al.*, 1:06-cv-00160-OWW-LJO ).[5]  FAC, ¶¶ 27, 18; see also, Notice of Motion and Motion for Appointment of Receiver; Memorandum of Points and Authorities, filed by Textron in the Textron Actions on February 16, 2006 ("Receivership Motion"), ¶ 27, 7:27-8, 7:16-19, attached as Exhibit "B" to Starlite's RJN.

Just days after filing the aforementioned action, Textron filed its Receivership Motion wherein it alleged as a basis for its motion that JFTC admitted to having "Diverted Collections" that were due Textron.  FAC, ¶¶ 18, 23; see also, Receivership Motion, 6:20-27; 7:19-23.  The admitted "Diverted Collections" Textron referenced in its Receivership Motion related to JFTC's "decision to apply collected accounts receivables to outstanding license fees **and other trade payables** in order to maintain the very existence of [JFTC]." See Declaration of John F. Turner in Opposition to Plaintiff's Motion for Appointment of Receiver, filed by JFTC in the Textron Actions on March 6, 2006 ("Turner Decl."), ¶ 5, 2:17-20, attached as Exhibit "C" to Starlite's RJN, (emphasis added).  In the cited portion of the Turner Declaration, Turner references and attaches his December 30, 2005 letter to Textron to which he attached a spreadsheet outlining JFTC's disbursements.  Id.  That spreadsheet evidences a payment in the amount of $679,961.18 to Starlite, which Textron claimed were "Diverted Collections" and also identified Starlite as JFTC's "Primary Calendar Source."  Id.; see also, Receivership Motion, 6:20-27, 7:15-23.

In opposition to Textron's Receivership Motion, JFTC responded that it intended to file for Chapter 11 bankruptcy.  FAC, ¶ 18.  Since that scenario would certainly require Textron to share JFTC's assets with other creditors of JFTC, Textron agreed to drop its receivership motion if JFTC would stipulate to the appointment of the CRO.  FAC, ¶ 18; see also, Stipulation and Order Appointing Chief Restructuring Officer, for Preliminary

---

[5] otherwise indicated.
These matters were consolidated into *Textron v. J.F. Turner Company, et al.*, 1:06-cv-00162-OWW-LJO and will be referred to collectively hereinafter as "the Textron Actions."

4

*Damrell Nelson Schrimp Pallios Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1 Injunction, and for Sealing of Documents, filed herein in the above referenced actions on

2 March 27, 2006 ("Stipulation and Order"), a true and correct copy of which is attached as

3 Exhibit "D" to Starlite's RJN.  Pursuant to the Stipulation and Order, the CRO was and is

4 charged, among other things, with ensuring that all receivables of JFTC are deposited into

5 the "lockbox" that Textron unilaterally controls.  FAC, ¶ 18.  Also pursuant to the

6 Stipulation and Order, and to further the defendants' plan and scheme to keep Textron's

7 control over JFTC secret, all court records in the Textron Actions were sealed without the

8 appropriate factual basis as required by law.[6]  FAC, ¶ 18.

9      The CRO retained and directed Mark Turner of JFTC to continue to be the JFTC

10 agent and contact person to Starlite.[7]  For example, several months *after* the CRO had been

11 appointed, and despite JFTC's insolvency, in June of 2006, Mark Turner notified Starlite

12 that JFTC had the "extra cash flow available" to pay what the defendants estimated the

13 10% pre-shipment payment would be toward the substantial 3.25 million-calendar order.

14 FAC, ¶¶ 24, 25; see also, June 20, 2006 email correspondence from Mark Turner to Grace

15 Lee of Starlite, a true and correct copy of which is attached as Exhibit "A" to the

16 Declaration of Kathy L. Monday in Support of Plaintiff's Opposition To Textron Financial

17 Corporation's Motion To Dismiss First Amended Complaint ("Monday Decl.").[8]  In this

18 June 20, 2006 email correspondence that is partially quoted in  ¶ 25 of the FAC, Mark

19 ───────────────────

20 [6]    Textron argues that even after the records were sealed, the existence of the action was still a matter

21      of public record that could be ascertained through a simple LEXIS search.  The implication that

22      Starlite, a Chinese company, was thereby given notice of Textron's action is specious and the
     ignores the reality of the parties' expectations as well as Textron's intentions.

23 [7]    Obviously, in all likelihood Textron had knowledge and agreed to such retention since it would

24      have had to agree to approve any compensation paid to Mark Turner.

25 [8]    The Court may consider this email correspondence without necessity of converting the herein
     motion to dismiss into a motion for summary judgment, because Starlite quoted from the email at ¶

26      25, line 7, of its FAC.  It is well-settled that in ruling on a motion to dismiss, courts are permitted to
     consider the full text of documents that are referenced and/or quoted only in part in the complaint,

27      and the authenticity of this document has not been challenged.  See Fecht v. The Price Co., 70 F. 3d
     1078, 1080, fn. 1 (9th Cir. 1995), cert. denied, 517 U.S. 1136 (1196); see also, In re Stac Electronics

28      Sec. Litig., 89 F. 3d 1399, 1405, fn. 4 (9th Cir. 1996).

5

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   Turner states that "we know that you and the Starlite team is [*sic*] working extremely hard

2   for us and we had a little of extra cash flow available, so we decided to forward this deposit

3   earlier than required."  <u>Id.</u>  Textron funded this "early payment."  FAC, ¶ 25.  To further

4   ensure Starlite's (false) sense of security with JFTC, Textron then funded an additional

5   payment of over $130,000, followed by another prepayment of over $62,000 in mid-June of

6   2006, and all the while never identifying itself or the CRO that Textron caused to be

7   appointed over JFTC.  FAC, ¶¶ 24-25.

8        Indeed, the CRO refrained from any direct involvement in the JFTC-Starlite

9   exchanges until November 10, 2006, even though it had been appointed eight (8) months

10  earlier.  FAC, ¶ 17.  Instead, Starlite believes and thereon alleges that a concerted effort was

11  made on the part of the defendants to conceal the CRO's and Textron's control of JFTC by

12  having Mark Turner continue to act as the Starlite contact person for JFTC until all of the

13  calendar orders were produced and shipped by Starlite.  FAC, ¶¶ 21, 23-25, 27.  Once the

14  product had been fully shipped over a period of months to JFTC, Textron refused to

15  authorize payment and JFTC failed to pay the 30% payments that were due in October,

16  November, and December.  FAC, ¶¶ 15, 17.  Starlite alleges that Textron and the CRO had

17  no intention to pay Starlite, and knew the funds would not be "available" to pay Starlite,

18  even when the CRO asserted that it was working with Textron and its credit committee to

19  come up with a payment plan and that payment to Starlite was 'in the budget.'  FAC, ¶¶ 19,

20  22, 29.

21                   **III.**

22              **<u>LEGAL ARGUMENT</u>**

23  **A.**    **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) MOTIONS TO**
24         **DISMISS ARE DISFAVORED AND ARE ONLY GRANTED IN**
            **EXTRAORDINARY CASES.**

25

26

27

28

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

6

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL**
**CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[9] challenges the adequacy of the pleadings, and asks the court to determine whether the facts as pled would, if established, support a valid claim for relief.  Fed. Rules Civ. Proc. R. 12.  Such motions are generally disfavored by the courts in light of the role pleadings play in federal practice and the liberal policy governing amendments to pleadings.  Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).  "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  Id.  Accordingly, Rule 12(b)(6) motions to dismiss are only to be granted in "extraordinary" cases.  United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981); Cauchi v. Brown, 51 F.Supp.2d 1014, 1016 (E.D. Cal. 1999); United States v. White, 893 F.Supp. 1423, 1428 (C.D. Cal. 1995).

In reviewing a Rule 12(b)(6) motion, the court **must accept as true all material allegations** in the complaint, as well as **all reasonable inferences** that may be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); United States v. White, 893 F.Supp. at 1428.  In addition, the court is required to construe the complaint in a light most favorable to the plaintiff.  Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

Dismissal pursuant to Rule 12(b)(6) is only appropriate where the defendant demonstrates that the plaintiff cannot prove facts sufficient to support its claim.  Parks School of Business, Inc. v. Symington, 51 F.3d at 1484.  The plaintiff's failure to do so must be apparent from the face of the pleading, and the court must not consider outside material or facts, except matters over which it can take judicial notice or documents quoted from or referenced in the complaint but not attached.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001); see also, Cauchi v. Brown, 51 F.Supp.2d 1014, 1016-17 (E.D. Cal. 1999); MGIC Ind. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

---

[9]  Any and all references to Rule or Rules in this opposition shall be to the Federal Rules of Civil Procedure unless otherwise indicated.

7

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    Courts do not consider whether it is possible for the plaintiff to prove its allegations

2   on a motion to dismiss, or whether possible difficulties in making such proof exist.  Nami

3   v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996).  The Third Circuit court in Nami stated that "[i]n

4   considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately

5   prevail, only whether they are entitled to offer evidence to support their claim." Id.; see

6   also, Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969).

7    For the reasons set forth more particularly below, Starlite has stated causes claims

8   against Textron for aiding and abetting fraud, intentional interference with economic

9   advantage, intentional interference with contractual relationship, negligent interference with

10   contractual and economic relationship, and for constructive trust, and Textron's conduct

11   was not privileged.  The Court is bound to accept as true all material allegations of the FAC

12   and all reasonable inferences that can be drawn therefrom.  The Court is not charged with

13   determining whether or not the allegations can be proven at trial – merely whether

14   actionable claims are presented.  Accordingly, as set forth particularly below, Starlite has

15   sufficiently stated claims in each of the causes of action challenged by Textron herein.

**B.   TEXTRON'S STATUS AS A SECURED CREDITOR UNDER ARTICLE 9
OF THE UCC DOES NOT ABSOLVE IT OF LIABILITY UNDER
EQUITABLE PRINCIPALS SUCH AS UNJUST ENRICHMENT.**

**1.   <u>The UCC Authorizes Starlite's Equitable Claims Against Textron,
Because Textron Encouraged JFTC's Debt to Starlite And Benefited
From Starlite's Production and Shipment of the Calendars, Which Were
Necessary to the Preservation of Textron's Collateral in JFTC.</u>**

The Eighth Cause of Action in Starlite's FAC seeks relief against Textron for unjust

enrichment and imposition of a constructive trust.  Contrary to Textron's assertion, the

UCC does permit application of equitable principles as follows:

> **Unless displaced by the particular provisions of this code, the principles of law
> and equity, including . . . the law relative . . . fraud, misrepresentation . . . and
> other validating or invalidating cause supplement its provisions.**

16
17
18
19
20
21
22
23
24
25
26
27
28

*Damrell Nelson
Schrimp Pallios
Pacher & Silva*
A Professional
Corporation

8

1  Cal. Comm. Code § 1103(b), (emphasis added); see also, Producers Cotton, 197 Cal. App.

2  3d at 660; Duggan, Inc., 821 P. 2d at 795.  Since the doctrine of unjust enrichment has not

3  been displaced by the particular provisions of Article 9, the doctrine may supplement the

4  UCC provisions.  Id. at 638; see also, Duggan, 821 P. 2d at 794.

5      In Producers Cotton, the court held a creditor with a perfected security interest in the

6  debtor's crop liable for unjust enrichment to an unsecured creditor of the debtor who

7  harvested the crop.  Producers Cotton, 197 Cal. App. 3d 638.  The court in Producers

8  Cotton held that the cause of action for unjust enrichment was meritorious since the secured

9  creditor knew the crop was being harvested by the unsecured creditor and made no inquiry

10  to the debtor about how the costs were being paid, yet benefited from the sale of the

11  harvested crop.  Id. at 658-59.  "Thus, [the court found], the facts satisfy the requirement

12  that a recipient of services performed either requested or acquiesced in them (citation) and

13  the requirement that the party to be charged with payment for a service received a benefit

14  (citation)."  Id. at 659.  The court in Producers Cotton further agreed with the position that

15  "to allow retention of the funds by [the supplier of harvesting services rather than the

16  secured creditor], who acquiesced in the harvesting and benefited from it, does not render

17  the California Uniform Commercial Code priorities uncertain, but rather leads to a fair

18  result under these particular facts."  Id. at 660.

19      In Duggan, the court found that evidence of the secured creditor's involvement in

20  Producers Cotton was even less than what was presented under the facts of its case.

21  Duggan, 821 P. 2d at 797.  In Duggan, the secured creditor "was the **source of all**

22  **operational funds** . . . **controlled the payment of all of [the debtor's] obligation**s, and

23  **received the proceeds of all of [the debtor's] accounts receivable**."  Id. at 798, (emphasis

24  added).  Indeed, the secured creditor was **informed** each time the corn was ordered and

25  **approved** each order.  Id.  Moreover, in Duggan, a representative of the secured creditor

26  was not only present on the occasion when the corn was delivered (as was the case in

27  Producer's Cotton), but "actively reviewed records that evidenced the amount of corn being

28  delivered."  Id.  The Duggan court recognized that the corn was used to feed the cattle, that

9

*Damrell Nelson
Schrimp Pallios
Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   was ultimately sold and billed based on weight gain, and that the proceeds from the sale of

2   the cattle were part of the accounts receivable executed on by the secured creditor.  Id.  The

3   court in Duggan held that "[a] secured creditor can protect itself from unjust enrichment

4   claims by **remaining uninvolved or by informing the proper parties of its intent not to**

5   **pay** for the debts incurred in maintaining, enhancing, or making additions to the secured

6   collateral."  Id. at 798, (emphasis added).  The court in Duggan further held that "[g]iven

7   the evidence concerning [the secured creditor's] active role in **creating the perception that**

8   **the corn would be paid for**, its failure to inform the parties otherwise, and the need for the

9   corn to feed the cattle in order to produce accounts receivable subject to the [secured

10   creditor's] security interest," was sufficient to warrant liability.  Id., (emphasis added).

11       Producers Cotton and Duggan were analyzed in Knox v. Phoenix Leasing

12   Incorporated, 29 Cal. App. 4th 1357, 1361-64 (1994).  Although the Knox court did not

13   find the facts of its case sufficient to override the UCC priority scheme under Producers

14   Cotton and Duggan, [10] the court nonetheless articulated the governing rule as follows:

15       'In a situation where a secured creditor initiates or encourages transactions between
16       the debtor and suppliers of goods or services, and benefits from the goods or
    services supplied to produce such debts, equitable principles require that the secured
17       creditor compensate even an unsecured creditor to avoid being unjustly enriched.
    The equitable claim is at its strongest when the goods or services are necessary to
18       preserve the security, as in *Producers Cotton Oil*.'  (Citation.)

19
20   9 Cal. App. 4th at 1363, (emphasis added).  Indeed, although California recognizes a cause

21   of action for unjust enrichment against a secured creditor under the UCC, the policy and

22   purpose of the UCC is still protected by the limitation that "mere acquiescence" by the

23   secured creditor of the unsecured creditor's expenditure is not sufficient to impose liability.

24   Id. at 1365.  "Something more is required to displace [the secured creditor's] favored

25   _____

26   [10]   In Knox, the supplier of wine barrels to the debtor winery was found to have simply *enhanced* the
value of the secured creditor's collateral and such delivery was deemed *not necessary* to the
27   preservation of the creditor's collateral in the winery. 29 Cal. App. 4th at 1368. Furthermore, the
court found that "[n]othing in [the secured creditor's] conduct amounted to fraud, actual or virtual
28   (citation), and [the unsecured creditor] does not contend otherwise." Id. at 1367.

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

10

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   position," and "[t]hat something is either conduct by the secured creditor or the nature of

2   the unsecured creditor's contribution to the collateral." <u>Id</u>.  Moreover, the court in <u>Knox</u>

3   recognized that fraud is expressly beyond the ambit of the protections afforded secured

4   creditors under the UCC.  <u>Id</u>. at 1364; citing Cal. Comm. Code § 1103.

5       **2.**    **<u>Weststeyn Dairy Does Not Govern Here.</u>**

6       Textron relies on <u>Weststeyn Dairy</u>, 280 F. Supp. 2d (E.D. Cal. 2003) and <u>Knox</u> for

7   the proposition that equitable principles do not supercede the UCC.  However, it is quite

8   clear that situations where the equitable exception to the UCC apply are *fact specific*, and

9   that the facts presented in those cases did not fall within the category of the exception.  As

10  Textron argues in footnote 12 of its Motion, this Court in <u>Weststeyn Dairy</u> found as

11  follows:

12      <u>Knox</u>'s interpretation of *Producers Cotton* was unnecessary to the decision and is
    dicta.  That dicta is inapplicable to this case because Plaintiffs, as unsecured

13      creditors, did not provide goods or services that were necessary to preserve the

14      collateral.  The prepayments for feed were the collateral, once received by [the
    debtor].

15

16  280 F. Supp. 2d at 1088.  This Court in <u>Weststeyn</u> still left open the possibility that <u>Knox</u>'s

17  interpretation of <u>Producers Cotton</u> could be applicable in another case under another set of

18  facts, e.g., where an unsecured creditor provides goods or services *necessary* to preserve

19  the collateral.  <u>Id</u>.

20      In addition, <u>Weststeyn</u> is distinguishable here on a number of material grounds.

21  First, the secured creditor in <u>Weststeyn</u> had no more than generalized knowledge that the

22  prepayments were made to the debtor by the unsecured creditors.  280 F. Supp. 2d at 1085.

23  Secondly, the court in <u>Weststeyn</u> found there was no evidence the debtor or the secured

24  creditor "fraudulently induced Plaintiffs to prepay for feed or used other wrongful means to

25  obtain the unsecured prepayments."  280 F. Supp. 2d at 1085.

26      Inversely, and contrary to Textron's allegations in its moving papers, the allegations

27  in Starlite's FAC do assert Textron's active participation in the wrongful/fraudulent

28  conduct at issue in encouraging JFTC's debt to Starlite.  <u>See</u> Textron's Motion, 21:17-21.

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

11

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

In the FAC, it is specifically alleged that: [11]  (a) Textron knew of the existence of JFTC's obligation to Starlite because it had an agent on site at JFTC as early as January of 2006 to closely monitor JFTC's finances and Textron had the CRO imposed in March of 2006, and approved and funded the prepayments for the purchase of the calendars from Starlite , (FAC, ¶¶ 18, 24-25, 27); (b) Textron exercised complete dominion and control over JFTC following appointment of the CRO pursuant to the Stipulation and Order, (FAC, ¶ 18-20); (c) Textron knew the sale of Starlite's calendars would comprise a major source of JFTC's receivables, (FAC, ¶¶ 26, 28); (d) Textron knew of JFTC's deepening insolvency when it assisted JFTC to pay for the 3.25 million-calendar order and knew JFTC had no funds to pay Starlite without Textron's approval, (FAC, ¶¶ 22, 27, 28); (e) Textron "allowed" and then "funded and paid" several required and not required pre-shipment payments for the 3.25 million-calendar order, thereby assisting JFTC to falsely claim to have 'extra cash flow available' to make the payments, (FAC, ¶¶ 24, 25); (f) such payments were made "to insure a sense of confidence in [JFTC] by Starlite," and  for the purpose of inducing Starlite to produce and ship the calendars with the knowledge that "without this pre-payment, Starlite would not ship the calendars," (FAC ¶ 24, 25); (g) all defendants knew Textron had no intent to continue paying Starlite once the calendars had been produced and shipped, (FAC, ¶ 22); (h) yet, "Textron wanted to ensure the calendars were shipped so [Textron] could control and usurp the proceeds of the calendars and utilize said proceeds to pay down [JFTC's] debt to Textron," (FAC, ¶ 24); (i) following shipment, receipt and use of the 2007 calendars by JFTC, and receipt by Textron of the receivables generated by the Starlite calendars, "Defendants made no payment on the accounts payable owed to Starlite," (FAC, ¶ 29); and (j) while the CRO, on behalf of Textron, continued to falsely assert that payment to Starlite "was in the budget" or was otherwise forthcoming, when these defendants knew

---

[11]   This outline of references to specific factual allegations contained  in the FAC is pertinent to and is hereby  incorporated by reference into the subsequent discussions below as if fully set out therein.

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  that Textron only intended to use the JFTC's receivables for its own benefit, (FAC, ¶¶ 19,

2  22, 29).

3      Accordingly, the same equities articulated in the <u>Producers</u> line of cases are at play

4  under the facts of this case.  Like <u>Producers Cotton</u>, the expenditures of the unsecured

5  creditor (Starlite) were "*necessary* to the development" of the secured creditor's collateral.

6  197 Cal. App. 3d 660, (emphasis in original).  The crops in <u>Producers Cotton</u> were sold and

7  the proceeds collected by the secured creditor *because* they were harvested by the

8  unsecured creditor.  <u>Id.</u>  Similarly here, it is not disputed that Starlite was the main supplier

9  of calendars to JFTC and that JFTC had revenues to pay Textron *because* of the Starlite-

10 produced calendars.  FAC, ¶¶ 25, 26, 29; <u>see also</u>, JFTC Spreadsheet.  Moreover, the

11 seasonal nature of the calendars (like the crops in <u>Producers Cotton</u>), made it imperative to

12 Textron that the calendars for the 2007 be delivered and sold in a timely manner.

13     In addition, like the secured creditor in <u>Duggan</u>, Textron had complete control over

14 JFTC following execution of the Stipulation and Order.  The CRO, on behalf of Textron,

15 collected all JFTC receivables and deposited them into the lockbox that <u>only</u> Textron could

16 control, Textron had to provide authorization for all expenditures for JFTC.  Accordingly

17 Textron provided the funds to make the early pre-payments for the calendars.  Further, the

18 CRO (while still concealing its involvement) was certainly aware of the exchanges between

19 Mark Turner and Starlite whereby false assertions of "extra cash flow" and notification of

20 early payments were made to Starlite, as well as confirmation of 3.25 million-calendar

21 order.

22     The policies underlying Article 9 of the UCC are not being compromised here by

23 allowing Starlite to proceed with its equitable claim against Textron under liability

24 notwithstanding the UCC priority scheme will still remain the exception, not the rule by

25 allowing the claim to stand.  As in <u>Producers Cotton</u>, here Starlite has presented "a classic

26

27

28

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

13

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  case for establishing an implied in law, or quasi-contract" against Textron.[12]  <u>See</u> 197 Cal.

2  App. 3d at 658.

3        Further, the court in <u>Knox</u>, while ultimately finding the unsecured creditor could not

4  prevail, found that "[the unsecured creditor's' complaint [for unjust enrichment] was **good**

5  **enough to state a cause of action**," and that "it took the introduction of evidence at the

6  ensuing trial to disclose the legal deficiency raised by [the secured creditor] in its motion

7  [for judgement on the pleadings based on its priority status under the UCC]."  29 Cal. App.

8  4th at 1361 (emphasis added).  Accordingly, the facts as stated in the FAC are good enough

9  to state a cause of action for unjust enrichment against Textron for purposes of overruling

10  Textron's Motion to Dismiss.

11  **C.    STARLITE IS NOT REQUIRED TO ALLEGE FRAUD WITH SPECIFICITY**

12  **WITH REGARD TO ITS THIRD CAUSE OF ACTION, BUT REGARDLESS, IT HAS ALLEGED ITS CLAIM AGAINST TEXTRON FOR AIDING AND**

13  **ABETTING FRAUD WITH SUFFICIENT PARTICULARITY.**

14        A cause of action for abetting and abetting tortious conduct is made where the

15  plaintiff alleges "(a) the party's knowledge the other's conduct constitutes a breach of duty

16  and gives substantial assistance or encouragement to the other to so act or (b) gives

17  substantial assistance to the other in accomplishing a tortious result and the person's own

18  conduct, separately considered, constitutes a breach of duty to the third person."  <u>Saunders</u>

19  <u>v. Superior Court</u>, 27 Cal. App. 4th 832, 846. (1994); citing Rest. Torts 2d, § 876(b), (c);

20  <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164 (1994); <u>Coffman</u>

21  <u>v. Kennedy</u>, 74 Cal. App. 3d 28, 31-32 (1977).

22        Contrary to <u>Textron's</u> argument, <u>Neilson v. Union Bank of California, N.A.</u>, 290 F.

23  Supp. 2d 1101, 1119 (C.D. Cal. 2003), does <u>not</u> provide that a party pleading aiding and

24

25
_____

26  [12]    Moreover, Textron's argument that Starlite is somehow not entitled to relief because Starlite did not allege having made any due diligence investigation to ascertain JFTC's financial

27  condition is misplaced and unsupported.  Such is not legal requirement to Starlite's claim for relief. Indeed, the plaintiffs in <u>Producers Cotton</u> (197 Cal. App. 3d at 644) and <u>Duggan</u>, (821 P. 2d at 792)

28  *knew* of the secured creditor's involvement and/or control over the debtor when they delivered their goods but were still granted equitable relief against the secured creditor.

14

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   abetting fraud must specifically plead fraud.  The only requirement articulated in <u>Neilson</u>

2   and the related cases is that "'[u]nder California law, actual knowledge and intent are

3   required to impose aiding and abetting liability.'"  <u>Id.</u>; <u>see also</u>, <u>Gerard v. Ross</u>, 204 Cal.

4   App. 3d 968, 983 (1988).

5       Thus, Starlite is not required to prove or allege that Textron <u>itself</u> made the

6   fraudulent representations or omissions, indeed, then the cause of action would be actual

7   fraud against Textron.  Starlite merely needs to allege that Textron knew of the fraudulent

8   activity and gave substantial assistance or encouragement in furtherance of the same.

9       The allegations in the FAC (outlined in the discussion above) allege Textron's

10  *knowledge* of JFTC's obligation to Starlite, that Textron actively assisted JFTC to give

11  Starlite the false *perception* of JFTC's solvency by authorizing and providing the funds for

12  JFTC's "early payments" to Starlite, and that Textron *intended* to induce Starlite to produce

13  and ship the 3.25 million calendar order in a timely manner so that Textron could benefit

14  from the sale thereof.  Starlite has also alleged that the CRO, as Textron's agent, falsely

15  assured Starlite that payment to Starlite was "in the budget," despite the fact it knew

16  Textron intended to keep all further receivables for its own benefit.

17      Textron also argues that it could not have engaged in a scheme with JFTC with

18  regard to JFTC's placement of the 3.25 million-calendar order while it was itself engaged

19  in contested litigation against JFTC at that time.  However, whether or not evidence exists

20  that can counter the allegations in Starlite's FAC is not to be considered in ruling on a Rule

21  12(b)(6) motion to dismiss.  Regardless, Textron is not innocent here merely because it was

22  also engaged in litigation against JFTC.  Textron itself admits that it began examining

23  JFTC's operations and finances in late 2005, and in early January of 2006, having placed

24  one of its agents at JFTC's headquarters for said purpose.  FAC, ¶¶ 27, 50; <u>see also</u>,

25  Receivership Motion, 7:16-19.  Moreover, the allegations sufficiently alleged (as outlined

26  in the discussion above) Textron's active involvement in the fraud at issue.  Textron

27  secretly gained complete control of JFTC's finances, then secretly authorized and funded

28

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

early payments to induce Starlite to produce and ship the calendars, never intending to pay for the calendars once they were received.

**D.   STARLITE'S INTERFERENCE CLAIMS AGAINST TEXTRON ARE ACTIONABLE AND SUFFICIENTLY PLED IN THE FAC.**

**1.   Starlite Has Stated a Claim for Intentional Interference With Economic Advantage As Set Forth in The Fifth Cause of Action of The FAC.**

The California Supreme Court first articulated the elements of the tort of intentional interference with prospective economic advantage in <u>Buckaloo v. Johnson</u>, 14 Cal. 3d 815, 827 (1975) as follows:

1.   An economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;
2.   The defendant's knowledge of the relationship;
3.   Intentional acts on the part of the defendant designed to disrupt the relationship;
4.   Actual disruption of the relationship; and
5.   Economic harm to the plaintiff proximately caused by the acts of the defendant.

<u>See also</u>, <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1153 (2003).  The same elements apply to the tort today, with the added understanding, since <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376 (1995), that a plaintiff seeking to recover damages for interference with prospective economic advantage must plead and prove that the defendants conduct was "'wrongful by some legal measure other than the fact of interference itself.'"  <u>Id.</u> at 1154.

The "wrongfulness" prong may be satisfied by conduct that is "illegal or unfair or immoral according to the common understanding of society."  <u>See</u> <u>LiMandri v. Judkins</u>, 52 Cal. App. 4th 326, 341 (1997) (citations omitted).  However, no specific intent is necessary. <u>Korea Supply Co.</u>, 29 Cal. 4th at 1165.  If a defendant knows that its wrongful acts are substantially certain to injure the plaintiff's business expectancy, the defendant can be held liable regardless of the motivation behind its actions.  <u>Id.</u>

16

*Damrell Nelson Schrimp Pallios Pacher & Silva* A Professional Corporation

1    Each of these required elements has been pled against Textron in Starlite's FAC.

2  As demonstrated in the outlined allegations above, Starlite has pled Textron's <u>knowledge</u> of

3  Starlite's economic relationship with JFTC and the terms of the 3.25 million-calendar order

4  (indeed it funded the estimated 10% pre-payment) Textron's <u>intentional actions</u> to disrupt

5  that contract by failing to authorize and provide funds to pay for the calendars per the

6  agreement once the calendars had shipped and instead using those proceeds to benefit itself

7  is also alleged in the FAC.  Starlite has further alleged that Textron's wrongful conduct in

8  helping to induce Starlite to produce and ship the calendars resulted in actual damages to

9  Starlite of over $2 million.

10   Moreover, contrary to Textron's assertions, Starlite has satisfied the "independently

11  wrongful" element of its Fifth Cause of Action.  As discussed in greater detail above,

12  Starlite has pled sufficient facts to sustain its cause of action against Textron for aiding and

13  abetting fraud.  This conduct is undeniably independently wrongful apart from Textron's

14  interference itself.  <u>See Knox</u>, 29 Cal. App. 4th at 1365. [13]

15   2.   **The Sixth Cause of Action for Intentional Interference with Contract in**
     **The FAC is Also Sufficiently Stated to Withstand Dismissal.**

17   It is well-settled that because interference with an existing contract is of greater

18  concern than interference with a prospective economic advantage, it is not necessary that

19  the defendant's conduct be wrongful apart from the interference with the contract itself.

20  <u>Quelimane</u>, 19 Cal. 4th at 38.  Instead, the required elements that must be pled to state a

21  cause of action for intentional interference with **contractual** relations are as follows:

22   1.   A valid contract between plaintiff and a third party;
     2.   Defendant's knowledge of this contract;
     3.   Defendant's intentional acts designed to induce a breach or disruption
          of the contractual relationship;

---

[13]   Furthermore, <u>Weststeyn Dairy</u> is not applicable to the facts here, because in this case, Textron was
not merely exercising its rights as a secured creditor.  Textron's exercise of undue dominion and
control over JFTC and the fact that it furthered JFTC's fraud over Starlite sets it apart from the
lender in <u>Weststeyn Dairy</u>.  <u>See Duggan</u>, 821 P.2d at 798.

17

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

4.     Actual breach or disruption of the contractual relationship; and

5.     Resulting damage.

Id. at 55.  There is no requirement that the conduct be independently "wrongful" by some other measure.  Woods v. Fox Broadcasting Sub., Inc., 129 Cal. App. 4th at 348.

Each of the elements required to allege a cause of action for intentional interference with contract have been pled against Textron in the FAC.  As outlined above, Starlite has specifically pled the existence of a valid contract for the production and shipment of 3.25 million box and wall calendars to JFTC, Textron's knowledge of that agreement, its intentional acts to disrupt that contract by collecting all the receivables from the sale of the calendars for itself without remitting payment to Starlite after the calendars had shipped, and resulting damage of over $2 million.

Textron argues that pursuant to Dryden, 65 Cal. App. 3d at 997, and cases citing Dryden, Starlite must further allege that the contract "would otherwise have been performed" and that the alleged interference was the "moving cause" of the breach.  See Textron's Motion, 8:18-9:4.  However, such language in Dryden and the cited cases relate to the court's discussion of the tort of **inducement** to breach a contract, as opposed to the **interference** causes of action alleged in Starlite's FAC.  The court in Shamblin v. Berge, 166 Cal. App. 3d 118, 122 (1985), explained that the cause of action for interference with contractual relationship "is slightly broader [than inducement to breach a contract] in that it protects against intentional acts not necessarily resulting in a breach").[14]

Regardless of this distinction, even if the Court determines that such requirements exist, the allegations of the FAC do allege that *but for* Textron's conduct with regard to the secret lockbox arrangement and its domination and control of JFTC, JFTC would have performed on the contract and that Textron was the moving cause of JFTC's breach.[15]

---

[14]    Shamblin cites Dryden in delineating the elements of **inducement** to breach a contract rather than interference with contractual relationship.  Shamblin, 166 Cal. at 122.

[15]    Even if the Court determines that Starlite should state more specifically in its FAC that JFTC would

18

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  Indeed, Starlite alleges that "the receivables collected from the sale of the Starlite product

2  constituted 'funds available'" to pay Starlite. FAC, ¶ 29. It is also evident from the

3  pleadings and declarations filed in this Court with regard to the Textron's Receivership

4  Motion, that *but for* Textron's exertion of dominion and control over JFTC, JFTC would

5  have continued to pay Starlite pursuant to their contract. See Turner Decl., ¶ 5, 2:17-20,

6  and Receivership Motion, 6:20-27; 7:19-23.[16] John F. Turner's declaration and the

7  December 30, 2005 letter and spreadsheet attached to his declaration demonstrate that

8  JFTC had every intention of using its receivables to keep JFTC's obligations to its licensers

9  and major vendors (including Starlite) first, "in order to maintain the very existence of the

10  company." See Turner Decl., ¶ 5, 2:17-20. JFTC articulated that it intended to do so

11  because JFTC's "continued operation benefits Textron and increases the likelihood of

---

13 14 15 16  have performed on the contract but for Textron's interference, this can be remedied by minor amendment to the FAC. Leave to amend is broadly granted and must be granted unless it is clear that amendments cannot cure the complaint's deficiencies. Lucas v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995). Starlite should therefore be granted leave to amend in order to include the aforementioned language if the Court requires it.

17 18 19 20 21 22 23  Indeed, leave to amend was granted in the Wynn v. National Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1091 (C.D. Cal. 2002), case cited by Textron for its proposition that Starlite must specifically allege that JFTC would otherwise have performed the contract. The cases cited by Textron where leave to amend was not granted are fully distinguishable. In Dryden, the court articulated the gist of the plaintiff's grievance was that in buying the processing plant, the defendant unjustifiably interfered with the plaintiff's contract with the former owners of the plant. 65 Cal. App. 3d at 995. However, in Dryden, the former owners of the processing plant sent letters to the plaintiff that they intended to cancel the contract well before the defendant even entered into possession of the plant. 65 Cal. App. 3d at 993, 997. Therefore, the defendant's conduct in Dryden had nothing to do with the parties' cancellation of the contract. Id. at 997. Furthermore, unlike the plaintiff in Dryden, Starlite has alleged that Textron knew of the existence of the Starlite contract with JFTC when it prevented JFTC from paying Starlite. Id. at 996; FAC, ¶¶ 22, 26, 27

24 25 26  In Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal., 2000), the court found amendment would have been futile, because the statute of limitations for the tortious interference claim had already run. In Augustine v Trucco, 124 Cal. App. 2d 229, 246 (2003), the court found that no contract existed and that the same was a "fatal fact" to plaintiff's inducement claims.

27 28  [16]  The Court may properly consider these matters of court record over which it may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. See Arpin, 261 F.3d at 925; Cauchi v. Brown, 51 F.Supp.2d at 1016-17.

19

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Damrell Nelson
Schrimp Pallios
Pacher & Silva*
A Professional
Corporation

1  repayment [to Textron]," and that JFTC's "continued production and sales will generate

2  additional accounts receivable, which will increase Textron's collateral." Id. at 3:3-5.

3      **3.     Starlite's Allegations of Negligent Interference with  Contractual and**
           **Economic Relationship in The Seventh Cause of Action Are Sufficiently**
4          **Stated to Withstand Dismissal.**

5

6          As noted above, contrary to the contentions of Textron, California courts do

7  recognize a claim for negligent interference with an existing contract.  Woods v. Fox

8  Broadcasting Sub., Inc., 129 Cal. App. 4th 344, 350 (2005).  In fact, this very Court has

9  quite recently recognized the existence of this tort.  See Greenly v. Sara Lee Corp., 2006

10  WL 3716769 at 4.  Courts consider this cause of action to be included within the broad

11  cause of action of negligent interference with prospective economic advantage.  SCEcorp v.

12  Superior Court, 3 Cal. App. 4th 673, 677 (1992).

13          Although Textron is correct that liability for negligent conduct may only be imposed

14  where there is a duty of care owed by the defendant to the plaintiff, "a duty may be

15  premised upon the general character of the activity in which the defendant engaged, the

16  relationship between the parties or even the interdependent nature of human society."

17  J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 803 (1979); citing Valdez v. J. D. Diffenbaugh

18  Co., 51 Cal. App. 3d 494, 505 (1975).  To help with this task, California courts have long

19  applied a six prong policy factor test in determining the scope of a particular defendant's

20  duty of care as follows:

21          (1)     the foreseeability of harm to the plaintiff;

22          (2)     the degree of certainty that plaintiff suffered injury;

23          (3)     the closeness of connection between the defendant's act and the plaintiff's

24                  injury;

25          (4)     the moral blame attached to defendant's conduct;

26          (5)     the policy of preventing future harm; and

27          (6)     the extent of defendant's burden and the consequences to the community of

28                  imposing a duty and liability.

20

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    <u>Id.</u> at 804.

2         In the present case, Starlite has alleged that Textron secretly took control over JFTC,

3    prevented JFTC from paying Starlite except when necessary to fraudulently induce Starlite

4    to produce and ship the calendars, knowing it did not intend to authorize payment for the

5    calendars once they had shipped, and knowing that Starlite would thereby be injured in

6    amount of the 90% payment that remained unpaid, in excess of $2 million.  Under these

7    circumstances as alleged in the FAC, Textron assumed a duty to Starlite.  In addition,

8    Textron's conduct in aiding and abetting fraud against Starlite is morally wrong.  Finally,

9    the burden on Textron would be minimal as it would merely require that Textron notify

10   suppliers that are essential to preserving its collateral that Textron does not intend to pay

11   for the goods once they are received.  Indeed, the court in <u>Duggan</u> identified this a means

12   by which the secured creditor can avoid liability for unjust enrichment.  821 P. 2d at 798.

13   Furthermore, as discussed in greater detail below, Textron's dominance and control over

14   JFTC created a duty to JFTC and its creditors.

15        **4.       <u>Textron's Conduct Was NOT Privileged.</u>**

16        Textron relies heavily on the <u>Quelimane Co. v. Stewart Title Guar. Co.</u>, 19 Cal. 4th

17   26 (1998), decision in support of its position that its conduct injuring Starlite is somehow

18   privileged and that therefore, Starlite's claims cannot stand.  However, <u>Quelimane</u> does not

19   support such a position.  The court in <u>Quelimane</u> overruled a demurrer based on such a

20   position stating that whether the defendant had a legitimate business purpose that justified

21   its actions was "a matter for trial."  <u>Id.</u> at 57.

22        Likewise, <u>Weststeyn Dairy</u>, 280 F. Supp 2d at 1088-89, is not controlling here

23   because in that case, as discussed above, Textron's interference was <u>not</u> "purely incidental"

24   to Textron's execution of its secured interest in JFTC.  In <u>Weststeyn Dairy</u>, this Court

25   explained that a secured creditor is immune from claims of intentional inference with

26   contract when it endeavors to advance some interest of its own *if* "the actor is not acting

27   criminally nor with **fraud** or violence or **other means wrongful in themselves**."  280. F.

28   Supp. 2d at 1088-89, (emphasis added).  As discussed above, Starlite has alleged that

21

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Textron acted wrongfully and helped JFTC in the commission of fraud in order to advance its secured interest.   Also unlike the lender in <u>Weststeyn Dairy</u>, Textron did not simply attach and execute on the assets and inventory available to it from JFTC at a given time. Instead, Textron entered into a secret agreement with JFTC to keep its dominion and control over JFTC secret in order to ensure that Starlite would produce and ship the seasonable product (calendars) to JFTC.  Starlite has alleged in the FAC that Textron aided and abetted fraud by these acts and in creating the false *perception* of JFTC's ability to pay.

## E.   TEXTRON'S DOMINATION AND CONTROL OVER JFTC CREATED A DUTY NOT ONLY FROM TEXTRON TO JFTC, BUT ALSO TO JFTC'S OTHER CREDITORS, INCLUDING STARLITE.

A duty was imposed on Textron when it undertook to exercise such a high degree of dominion and control over JFTC.  <u>See</u> <u>Commons</u>, 35 Cal. App. 3d at 144-45; <u>Credit Managers</u>, 51 Cal. App. 3d at 361; and <u>Pension Trust Fund</u>, 307 F. 3d at 955.

In <u>Credit Managers</u>, a corporation's lender compelled it to employ an agent of the lender as its business consultant, to which the corporation was compelled to surrender complete management and control, to the extent that the agent was able to overrule and supplant the board of directors and shareholders in operation of the business.  51 Cal. App. 3d at 355, 360.  The owners of the corporation filed an action for breach of fiduciary duty and conspiracy against the bank and its agent for having caused the corporation's financial ruin.[17]  <u>Id.</u>, at 354. The appellate court in <u>Credit Managers</u> held that under such circumstances, the trial court could properly conclude that the bank's agent "had the same fiduciary obligation" to the debtor corporation **"<u>and its creditors</u>"** and stockholders, as would the officers and directors of the corporation.  <u>Id.</u> at 360 (emphasis added), 361. Although the first amended complaint did not so allege, the court in <u>Credit Managers</u> considered evidence that the agent "exercised such **dominion and control** over the

---

[17]   Credit Managers was actually assignee of the owners of the corporation and sued for the benefit of The corporation's creditors other than the bank.  <u>Credit Managers</u>, 51 Cal. App. 3d at 358.

22

*Damrell Nelson Schrimp Pallios Pacher & Silva* A Professional Corporation

1    corporate affairs of [the debtor corporation] that it ordered the stockholders (who were

2    employed by the corporation) 'off salary.'" Id. at 360, (emphasis added).

3         Credit Managers was applied and followed in the Ninth Circuit decision of Pension

4    Trust Fund, 307 F.3d at 955, where the court determined that even if the lender did not

5    directly control the debtor to the extent necessary to establish a fiduciary duty on the

6    lender's part, "the facts do support the possibility that [the lender] controlled [the debtor] in

7    a manner that makes [the lender] liable to [the debtor] and [the debtor's] creditors for

8    breach of fiduciary duty." Citing Credit Managers, 51 Cal. App 3d at 360.

9         Similarly, in Commons, 35 Cal. App. 3d at 144, the court held that one who

10   "**dominates and controls**" an insolvent corporation may not "use his power to secure for

11   himself an advantage over other creditors of the corporation." (Emphasis added.) "The

12   corporate controller-dominator is treated in the same manner as the director of an insolvent

13   corporation and thus occupies a fiduciary relation to its creditors." Id.

14        Additionally, in an Indiana federal district court decision that is illustrative here, an

15   asset-based lender of a debtor corporation was held liable to the Internal Revenue Service

16   for unpaid withholding taxes due from the debtor, since "the lender had complete control

17   over the corporation's finances which funded the corporation's payroll." United States v.

18   Vaccerella, 735 F. Supp. 1421, 1429 (S.D. Ind. 1990). The lender had a 'lockbox'

19   arrangement with the debtor whereby the debtor's accounts receivable were sent directly to

20   the lockbox account that only the lender could access. Id. at 1424. An agent of the lender

21   was responsible for prioritizing which creditors of the debtor to pay, and that agent had veto

22   power over the debtor's list of anticipated and actual expenses. Id. at 1425. If the lender

23   did not approve of an expense, the debtor could not pay it. Id. The lender knew about the

24   debtor's withholding obligation to the federal government, yet decided to fund only net

25   payroll despite its knowledge that the debtor had no other sources from which to pay the

26   tax. Id. at 1426. In addition, the Vaccarella court found that the lender's "choices of which

27   creditors to pay reflected priorities calculated to protect its own collateral position" to the

28   exclusion of the debtor's other creditors. Id.

23

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1     Similarly here, it is not disputed that pursuant to the lockbox arrangement and the

2  imposition of the CRO, Textron had *complete and total domination and control* over JFTC.

3  Textron had to authorize JFTC's expenditures and controlled all of the funds used to

4  operate JFTC.  Like <u>Credit Managers</u>, the CRO had the power to overrule and supplant the

5  owners of JFTC in their decision-making, including (as in <u>Vaccarella</u>), the priority of which

6  creditors to pay.  <u>See</u> Turner Decl., 5, 2:17-20.  Also as in <u>Vaccarella</u>, here it is evident

7  from the FAC that Textron controlled JFTC for the purpose of furthering its own interest in

8  JFTC at the expense of the corporation and its other creditors.  As such, it is clear that

9  Textron stepped into a fiduciary duty and relationship as to JFTC and Starlite as one of its

10  creditor.

11  **F.     TEXTRON IS NOT PROTECTED BY THE NOERR-PENNINGTON**

12  **DOCTRINE NOR THE LITIGATION PRIVILEGE.**

13     **1.    <u>The Noerr-Pennington Doctrine Is Inapplicable Here</u>.**

14     Textron's reliance on the Noerr-Pennington doctrine is misplaced.  In <u>Theofel v.

15  Farey-Jones</u> 359 F. 3d 1066, 1078 (9th Cir. 2004), the Ninth Circuit explained that the

16  Noerr-Pennington doctrine exempts parties from civil liability for petitioning of public

17  authorities for redress on First Amendment grounds.  "'Lawsuits are protected by the

18  doctrine because they are essentially petitions to the courts for redress of grievances

19  (Citation).'"  <u>Id.</u>  However, "the doctrine is typically invoked to immunize th*e act of

20  petitioning itself* -- i.e., the filing of the lawsuit."  <u>Id.</u>, (emphasis added).  The court in

21  <u>Theofel</u> recognized that while the Noerr-Pennington doctrine has been extended to certain

22  conduct found 'incidental to the prosecution of the suit,' it found the defendant's were not

23  entitled to claim the immunity with regard to their service of an invalid subpoena.  <u>Id.</u>

24     The defendants in <u>Theofel</u> tried to claim Noerr-Pennington immunity from civil

25  liability after they served an invalid civil subpoena on plaintiff's internet service provider

26  (ISP) that resulted in the ISP's disclosure of plaintiff's private e-mails.  <u>Id.</u> at 1071-72.  The

27  defendants argued that they were entitled to the immunity because the defective subpoena

28  that they were sued upon was incidental to their litigation.  <u>Id.</u> at 1078.  Assuming

24

*Damrell Nelson
Schrimp Pallios
Pacher & Silva*
A Professional
Corporation

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    *arguendo* the defense applied, the court determined that it would fail, because the doctrine

2    does not protect 'objectively baseless' sham litigation. <u>Id.</u>, citing <u>Real Estate Investors, Inc.</u>

3    <u>v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 60 (1993).  The magistrate judge had found

4    "the subpoena was **'transparently and egregiously' overbroad** and that defendants acted

5    with gross negligence and in bad faith.' <u>Id.</u> (emphasis added). The Ninth Circuit agreed

6    and found this was "tantamount to a finding that the subpoena was objectively baseless."

7    <u>Id.</u>  Furthermore, the court in <u>Thoefel</u> denied the defendants' efforts to have the court look

8    only at the merits of the underlying litigation and not at the subpoena. <u>Id.</u>  "[The

9    defendants] apparently think a litigant should have immunity for any and all discovery

10   abuses so long as his lawsuit has some merit." <u>Id.</u>  The Ninth Circuit found "no authority

11   for that implausible proposition," and held that "[a]ssuming *Noerr-Pennington* applies at

12   all, we hold that it is no bar where the challenged discovery conduct itself is **objectively**

13   **baseless.**" <u>Id.</u>, (emphasis added).

14      Noerr-Pennington does not apply here, because Textron's actions in assisting JFTC

15   to defraud Starlite as outlined above are not themselves authorized by the Stipulation and

16   Order.   In other words, Textron cannot immunize itself from the allegations in the FAC

17   merely by saying that it was *entitled* to engage in such conduct pursuant to order of this

18   Court.  If that were the case, every litigant desiring to defraud or interfere with the business

19   relations of another would simply lodge documents with the court in an attempt to later

20   claim immunity for any wrongful activities *related* to the document filed.

21      Even if the Court agrees with Textron with regard to application of Noerr-

22   Pennington here, it should nonetheless deny immunity under the doctrine.  The only

23   wrongful conduct alleged in the FAC that can be associated with the Stipulation and Order

24   is the act of having concealed the entire court record pursuant to said order.  As noted

25   above, all of the other conduct complained of in the FAC relates to activities not authorized

26   in the order.  Since Textron's act of filing the sealing order in the Stipulation and Order was

27   objectively baseless, the immunity does not apply.  Here, as in <u>Theofel</u>, the Stipulation and

28   Order sealed the entire court record without any compelling reason or findings of fact as

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

25

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   required pursuant to decisional authority.  See Kamakana v. City and County of Honolulu,

2   447 F. 3d 1172, 1179 (9th Cir. 2006), (citing, Hagestad v. Tragesser, 49 F. 3d 1430, 1434

3   [9[th] Cir. 1995]).  As articulated by Starlite in its Motion to Intervene for the Limited

4   Purposes of Moving to Unseal Records, filed June 18, 2007, in the Textron Actions,

5   Textron had no grounds to seek such an order, thereby rendering the order objectively

6   baseless and not subject to the Noerr-Pennington doctrine.

7   **2.      The Litigation Privilege Does Not Bar Starlite's Action.**

8   Contrary to Textron's assertions, the litigation privilege "is not without limit."

9   Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1242 (2007).  For

10  example, the privilege is not extended to actions for malicious prosecution, as the court in

11  Albertson v. Raboff, 46 Cal. 2d 375, 382 (1956) explained, "'[t]he policy of encouraging

12  free access to the courts that underlies the absolute privilege . . . is outweighed by the

13  policy of affording redress for individual wrongs when the requirements of favorable

14  termination, lack of probable cause, and malice are satisfied.'"  Id.  It has also been held

15  that the litigation privilege does not apply to equitable actions.  Home Ins. Co. v. Zurich

16  Ins. Co., 96 Cal. App. 4th 17, 26 (2002); citing, Silberg v. Anderson, 50 Cal. 3d 205, 214

17  (1990).  It is well-settled that the privilege under Civil Code section 47(b)(2) protects only

18  "communications," and not conduct.  Kimmel v. Goland, 51 Cal. 3d 202, 212 (1990).  Nor

19  does the privilege apply to a course of conduct that may include communicative acts.

20  Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 575-76, fn. 5 (1973).

21  As noted above, Textron's conduct of helping JFTC to fraudulent induce Starlite to

22  act to its detriment is not a communicative act entitled to constitutional protection and

23  statutory immunity.   Furthermore, none of the cases cited in its motion preclude Starlite

24  from seeking equitable relief against Textron for its conduct in using the Stipulation and

25  Order to further conceal its domination and control over JFTC.

26  . . .

27  . . .

28  . . .

Damrell Nelson
Schrimp Pallios
Pacher & Silva
A Professional
Corporation

26

1

### IV.

### <u>CONCLUSION</u>

Based upon the foregoing, Starlite respectfully requests that Textron's Rule 12(b)(6) Motion to Dismiss be denied, or in the alternative, that Starlite be granted leave to amend its FAC.

DAMRELL, NELSON, SCHRIMP,
PALLIOS, PACHER & SILVA

Date:  January 25, 2008                    By: _____
                                                 Kathy L. Monday
                                                 Maria Fatima Gioletti
                                                 Attorneys for Plaintiff
                                                 Starlite Development (China) Ltd.

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation

27

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL
CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

**PROOF OF SERVICE**

2

    I am a citizen of the United States and am employed in Stanislaus County.  I am over the age of eighteen (18) years and not a party to this action; my business address is

3

1601 1 Street, Modesto, CA 95354.

4

    On the date set forth below, I served the following documents:  **PLAINTIFF'S OPPOSITION TO**

5

**DEFENDANT TEXTRON FINANCIAL CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT,** by placing a true copy thereof enclosed in a sealed envelope and served in the

6

manner and /or manners described below to each of the parties herein and addressed as follows:

7

| Mark Hurwitz/Leo D. Plotkin | Jeff Singletary |
|---|---|
| Levy, Small & Lallas | Snell & Wilmer |
| 815 Moraga Drive | 600 Anton Boulevard, Suite 1400 |
| Los Angeles, California  90049-1633 | Costa Mesa, California  92626-7689 |
| Facsimile (310) 471-7990 | Facsimile (714) 427-7799 |
| Christopher H. Bayley (*Pro Hac Vice*) | |
| Snell & Wilmer | |
| One Arizona Center | |
| Phoenix, Arizona  85004-2202 | |
| *Facsimile (602) 382-6070* | |

8

9

10

11

12

13

14

  XX    BY MAIL:  I caused such envelope(s) to be deposited in the mail at my business address,

15

addressed to the addressee(s) designated.  I am readily familiar with DAMRELL, NELSON, SCHRIMP, PALLIOS, PACHER & SILVA practices for collection and processing of

16

correspondence and pleadings for mailing.  It is deposited with the United States Postal Service on that same day in the ordinary course of business.

17

_____    BY HAND DELIVERY:  I caused such envelope(s) to be delivered by hand to the addressee(s)

18

designated.

19

_____    BY OVERNIGHT COURIER SERVICE:  I caused such envelope(s) to be delivered via

20

overnight courier service to the addressee(s) designated.

21

_____    BY FACSIMILE:  I caused said document to be transmitted to the telephone number(s) of the addressee(s) designated.

22

    I declare under penalty of perjury under the laws of the State of California

23

that the foregoing is true and correct.

24

    Executed at Modesto, California, on January   25  , 2008.

25

26

    Liz Welsch

27

28

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT TEXTRON FINANCIAL CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Damrell Nelson*
*Schrimp Pallios*
*Pacher & Silva*
A Professional
Corporation