1  LEO D. PLOTKIN (SBN 101893)
2  MARK D. HURWITZ (SBN 151159)
   LEVY, SMALL & LALLAS
3  A Partnership Including Professional Corporations
   815 Moraga Drive
4  Los Angeles, California 90049
   Telephone: (310) 471-3000
5

6  Attorneys for Defendant
   TEXTRON FINANCIAL
7  CORPORATION

8

9              UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF CALIFORNIA

11

12 STARLITE DEVELOPMENT (CHINA) LTD.,)   Case No. 1:07-CV-01767-OWW-DLB
                                      )
13              Plaintiff,            )
                                      )
14                                    )   DEFENDANT TEXTRON FINANCIAL
        vs.                           )   CORPORATION'S REPLY
15                                    )   MEMORANDUM IN SUPPORT OF
                                      )   MOTION TO STRIKE PORTIONS OF
16 TEXTRON FINANCIAL CORPORATION;     )   PLAINTIFF'S FIRST AMENDED
   MCA FINANCIAL GROUP, LTD.; MORRIS  )   COMPLAINT
17 C. AARON; JOHN F. TURNER & CO., INC.,)
   a California corporation; JFTC, INC.,)
18 a California corporation; MARK     )   [FRCP 9(b), 12(b)(6)]
   TURNER; JOHN F. TURNER;            )
19 KATHLEEN A. TURNER; and            )   Date:       March 10, 2008
20 DOES 1 through 20, inclusive,      )   Time:       10:00 a.m.
                                      )   Courtroom   3
21              Defendants.           )
                                      )
22                                    )
                                      )
23                                    )
                                      )
24

25

26

27

28

For the reasons set forth in the moving and reply papers in support of the accompanying motion of defendant Textron Financial Corporation ("TFC") to dismiss the First Amended Complaint ("Amended Complaint") of plaintiff Starlite Development (China) Ltd. ("Starlite"), Starlite has not alleged facts sufficient to state any claim against TFC, much less any basis for punitive damages. The conduct of which Starlite complains amounts merely to TFC's exercise of its rights as a secured creditor under Article 9 of the Uniform Commercial Code and as a litigant before this Court [see Request for Judicial Notice in support of Motion to Dismiss ("TFC RJN"), Ex. B]. Even if it were possible to state a tort claim against TFC, there is nothing in the Amended Complaint that suggests that TFC acted with any particular intent to "cause injury to" Starlite or to subject Starlite to "cruel and unjust hardship," or was otherwise guilty of "oppression, fraud, or malice" as defined in California Civil Code Section 3294(c).

Any suggestion that punitive damages may be alleged against TFC is belied by the records of this Court in <u>Textron Financial Corporation v. John F. Turner and Company</u>, Case No. 06-CV-00162 OWW-LJO (the "TFC/Turner Action"), of which TFC has properly requested, without objection by Starlite, that this Court take judicial notice.[1] TFC's motion papers in the TFC/Turner Action demonstrate that TFC duly acted to enforce its rights as Turner Company's secured creditor, and that TFC certainly did not aid or abet Turner Company in perpetrating any fraud against Starlite. For instance, the Declaration of P. Vince Martinez dated February 15, 2006 [TFC RJN, Ex. G] established that Turner Company:

- Was contractually obligated to pay to TFC all revenues that Turner Company received from all sources ("Collections") [¶ 14(b) & Ex. 1, § 5.1];

---

[1] Starlite itself has requested that the Court take judicial notice of records in the TFC/Turner Action, including (i) TFC's motion for appointment of a receiver for John F. Turner and Company ("Turner Company"), (ii) the March 6, 2006 Declaration of John F. Turner in opposition thereto, and (iii) this Court's March 24, 2006 Order Appointing Chief Restructuring Officer, for Preliminary Injunction and for Sealing of Documents ("CRO Order"). Starlite further has asserted that this Court may consider the full text of documents that Starlite referenced in its Amended Complaint [Opp. to Motion to Dismiss 5:25-28]. Since the Amended Complaint refers to, among other things, TFC's motion for appointment of a receiver for Turner Company [¶¶ 18, 23], this Court may consider the papers that TFC filed in support thereof, including the items attached to TFC's Request for Judicial Notice.

- Failed to remit to TFC, and instead diverted to other uses, <u>$2.5 million</u> in Collections in December 2005 [¶¶ 16(a), 27 & Exs. 7, 9];
- <u>Admitted</u> on December 30, 2005 that it diverted nearly $2 million in Collections that it was required to remit to TFC, including <u>$679,961.18 that it paid to Starlite</u> [¶ 24 & Ex. 7];[2]
- Failed to pay to TFC a $2.1 million Overadvance that resulted from Turner Company's diversion of Collections [¶ 31];
- Owed over <u>$10,000,000</u> to TFC as of February 10, 2006 [¶¶ 33-34 & Ex. 10]; and
- Failed to deposit <u>any</u> Collections into the lockbox that had been established pursuant to the loan agreement between TFC and Turner Company [¶¶ 36-37 & Ex. 1, § 5.2].

Against this backdrop, Starlite cannot be heard to argue that TFC perpetrated any wrongdoing toward Starlite with respect to calendars that Turner Company had already ordered on January 19, 2006 [Amended Complaint, ¶ 15]. If anything, Starlite benefited from Turner Company's wrongdoing, in that it received $679,961.18 that Turner Company was required to pay to TFC. At any rate, TFC cannot be faulted for acting to enforce its $10,000,000 claim, including its attempt to obtain appointment of a receiver for Turner Company, after suffering the diversion of $2.5 million that it was contractually entitled to receive.

Moreover, once this Court issued the CRO Order on March 24, 2006, the CRO had control over Turner Company's operations, thereby precluding TFC from acting to defraud or otherwise to perpetrate any wrongdoing against Starlite. As an officer of this Court, the CRO certainly could not act as TFC's agent or permit TFC to control Turner Company's activities. Furthermore, although the CRO Order sealed the records of the TFC/Turner Action, (a) TFC's Complaint and motion papers therein were public record when they were filed in mid-February 2006 and so remained for over a month thereafter, (b) the existence of the TFC/Turner Action

---

[2] John F. Turner confirmed this admission, including the diversionary payment to Starlite, in his March 6, 2006 declaration in opposition to TFC's motion. Starlite has requested that this Court take judicial notice of Mr. Turner's declaration.

-2-

remained public record, and could have been ascertained through a simple LEXIS search, even after the records were sealed, (c) TFC's UCC-1 financing statement, identifying it as Turner Company's secured creditor [TFC RJN, Ex. B] has always been public record, and (d) Starlite cannot show that the sealing of this Court's records had any adverse impact on Starlite, much less that it constituted fraud, oppression or malice that warrants a prayer for punitive damages.

Starlite, of course, has not alleged any fraud by TFC. Instead, Starlite claims that TFC aided and abetted fraud by Turner Company, which could not have occurred because (a) TFC was adverse to Turner Company before the CRO Order and (b) Turner Company was under the control of the CRO after the CRO Order. In addition, since the CRO did not communicate with Starlite until November 2006 [Amended Complaint, ¶ 17], after Starlite made its final shipment to Turner Company [id., ¶ 16], the CRO could not have made any fraudulent representation to Starlite on which Starlite relied to its detriment. Thus, Starlite has not shown any fraud that TFC aided or abetted, much less that TFC's conduct supports the imposition of punitive damages.

Starlite has not cited any authority to support a punitive damages claim against TFC. Starlite's citation to In re First Alliance Mortg. Co., 2003 U.S. Dist. LEXIS 25925 (C.D. Cal. June 16, 2003) is to no avail, as the Court there (a) did not analyze whether punitive damages may be recovered on an aiding and abetting claim and (b) found that punitive damages could not be awarded based on fraud because there was no duty to disclose [id. at *20-*21]. Since TFC had no communications or relationship at all with Starlite, TFC did not have, much less breach, any duty of disclosure to Starlite. In any event, Starlite does not even seek punitive damages against TFC on its alleged Third Cause of Action for aiding and abetting fraud.

Starlite has not cited any authority that an arm's length secured creditor such as TFC owes a fiduciary duty or other duty of disclosure to unsecured creditors with whom it has no relationship. In Commons v. Schine, 35 Cal. App. 3d 141 (1974), the court found that the sole shareholder and president of the general partner of a partnership owed a duty to the partnership's creditors. In Pension Trust Fund v. Federal Ins. Co., 307 F.3d 944 (9th Cir. 2002), the "lender" that owed a duty to other creditors was a real estate investor that created the "borrower" [id. at 948]. Credit Managers Ass'n v. Superior Court, 51 Cal. App. 3d 353 (1975) involved a business

consultant who was given complete control of a corporation, not a secured creditor of a company operated by a Court-appointed officer such as a receiver or CRO. United States v. Vaccarella, 735 F. Supp. 1421 (S.D. Ind. 1990) is inapposite, as it involved specific Internal Revenue Code provisions concerning responsibility for federal tax payments, not any purported duty of a secured creditor to unsecured creditors.[3]

In essence, Starlite attacks TFC's conduct in obtaining the CRO Order and cooperating with the Court-appointed CRO as wrongful conduct that justifies an award of punitive damages. Not only do Starlite's own allegations, and the matters subject to judicial notice, preclude Starlite from substantiating any such claim, but Starlite's claim runs afoul of the Noerr-Pennington doctrine. Starlite has asserted that the doctrine does not apply to "objectively baseless" litigation conduct [Theofel v. Farey-Jones, 359 F.3d 1066, 1079 (9th Cir. 2003)], but TFC's filings in the TFC/Turner Action demonstrate that TFC's conduct was wholly justified, and cannot in any way be characterized as "objectively baseless." Starlite may not have agreed with the conduct of TFC, the CRO, or this Court in the TFC/Turner Action, but Starlite cannot show that TFC may somehow be liable for punitive damages for its actions to enforce its rights as a secured creditor of a company that admittedly deprived TFC of millions of dollars to which TFC was entitled.

For the foregoing reasons, TFC respectfully requests that the Court strike the following portions of the Amended Complaint:

1. <u>Page 12, paragraph 63, lines 25 through 26</u>: "Textron acted willfully and fraudulently so as to justify the award of exemplary and punitive damages";

2. <u>Page 13, paragraph 71, lines 23 through 24</u>: "Defendant Textron acted willfully and fraudulently so as to justify the award of exemplary and punitive damages";

---

[3] Starlite's citations to Producers Cotton Oil Co. v. Amstar Corp., 197 Cal. App. 3d 638 (1988) and Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc., 821 P.2d 788 (Colo. 1991) are irrelevant, in that they (a) pertain to Starlite's claim for unjust enrichment, not an intentional tort claim on which Starlite seeks punitive damages, (b) do not support an award of punitive damages against TFC, and (c) have been rejected by several courts, including this Court. Knox v. Phoenix Leasing, 29 Cal. App. 4th 1357, 1363 & n.7 (1994); Weststeyn Dairy 2 v. Eades Commodities Co., 280 F. Supp. 2d 1044, 1088 (E.D. Cal. 2003).

-4-

3.  <u>Page 16, paragraph 3 of the Prayer for Relief, line 19</u>: "For punitive damages [against TFC] in an amount according to proof at trial".

DATED: February 14, 2008

LEO D. PLOTKIN
MARK D. HURWITZ
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

By /s/ Leo D. Plotkin
    Leo D. Plotkin
Attorneys for Defendant
TEXTRON FINANCIAL CORPORATION

21670

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 815 Moraga Drive, Los Angeles, California 90049.

On February 14, 2008, I served the documents described as DEFENDANT TEXTRON FINANCIAL CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT on the interested parties in this action by placing a true copy thereof in sealed envelope(s) addressed as follows:

Kathy L. Monday, Esq.
DAMRELL, NELSON, SCHRIMP, PALLIOS,
  PACHER & SILVA
1601 I Street, Fifth Floor
Modesto, CA  95354

Christopher H. Bayley, Esq.
SNELL & WILMER, L.L.P.
400 East Van Buren
One Arizona Center
Phoenix, Arizona 85004-2202

Jeff Singletary, Esq.
SNELL & WILMER
600 Anton Boulevard, Suite 1400
Costa Mesa, CA  92626-7689

☑ (By E-Mail) I caused such document to be sent on this date via e-mail to the offices of the addressee.

☑ (By Facsimile) I caused such document to be sent on this date via telecopy machine to the offices of the addressee

☑ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed February 14, 2008, at Los Angeles, California.

_/s/ Heidi Petrilli_
Heidi Petrilli